PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SHONITHA LYNETTE KNIGHT,

*Defendant-Appellant.*

No. 09-4282

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:06-cr-00209-FDW-1)

Argued: March 26, 2010

Decided: June 4, 2010

Before TRAXLER, Chief Judge, and GREGORY and
AGEE, Circuit Judges.

Affirmed by published opinion. Chief Judge Traxler wrote the
opinion, in which Judge Gregory and Judge Agee joined.

## COUNSEL

**ARGUED**: Ann Loraine Hester, FEDERAL DEFENDERS
OF WESTERN NORTH CAROLINA, INC., Charlotte, North
Carolina, for Appellant. Matthew Theodore Martens, OFFICE
OF THE UNITED STATES ATTORNEY, Charlotte, North

Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Kevin Tate, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Edward R. Ryan, Acting United States Attorney, Kelli H. Ferry, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

---

## OPINION

TRAXLER, Chief Judge:

Shonitha Knight pleaded guilty to a felon-in-possession charge, *see* 18 U.S.C.A. § 922(g) (West 2000), and was sentenced to 60 months' imprisonment. Knight appeals, raising various challenges to the calculation of her Guidelines sentence. Finding no error that warrants reversal, we affirm.

### I.

Knight lived in a hotel in Gastonia, North Carolina. Police knocked on her door after getting reports about an unusual amount of activity around her room; Knight opened the door and consented to a search. The police found some marijuana hidden in the toilet and a loaded pistol with obliterated serial numbers under the mattress. There were three men in the hotel room when the police arrived, but Knight did not suggest that the gun belonged to any of the men. Instead, Knight told the police that she bought the gun for protection. Knight also admitted that because she had a prior felony conviction, she knew she was not supposed to have a gun.

Knight was arrested on a federal felon-in-possession charge on December 8, 2006, and was released on bond and placed under pre-trial supervision. She failed to appear at a calendar call in May 2007, and she stopped contacting her attorney and

pre-trial services around the same time. Knight was arrested almost a year later in the Southern District of Texas and was brought back to North Carolina.

Knight pleaded guilty to the felon-in-possession charge. Her advisory Guidelines sentencing range as calculated in the presentence report and accepted by the district court was 92-115 months. The district court, however, concluded that a downward variance was appropriate and sentenced Knight to 60 months.

## II.

Knight first contends that the district court improperly relied on a prior arson conviction to increase her base offense level. We disagree.

Sentencing for a felon-in-possession charge is governed by U.S.S.G. § 2K2.1 (2007), which sets a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." *Id.* § 2K2.1(a)(4)(A). The application notes specify that "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." *Id.* cmt. n.1 Section 4B1.2 defines "crime of violence" as "bur-glary of a dwelling, arson, or extortion, [a crime that] involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

Knight has a prior conviction in Texas for second-degree arson. *See* Tex. Penal Code Ann. § 28.02. Although the Guidelines specify that burglary, arson, and extortion are crimes of violence, the Guidelines do not define those crimes, and the offense-level enhancement is not automatically appli-cable in every case where a defendant's record shows a con-viction for one of the listed crimes. Instead, to determine

whether Knight's arson conviction qualifies under § 4B1.2(a)(2), we apply the approach set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), which requires us to ask whether the state crime substantially corresponds to the contemporary, generic definition of the crime at issue.[1] *See id.* at 589, 590 (concluding that, with regard to burglary as a predicate offense, Congress "had in mind a modern 'generic' view of burglary, roughly corresponding to the definitions of burglary in a majority of the States' criminal codes," "regardless of technical definitions and labels under state law"); *see also United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009) ("Consistent with *Taylor*, we hold that an offense constitutes arson . . . if . . . its statutory definition substantially corresponds to generic arson . . . ." (alteration and internal quotation marks omitted)); *United States v. Hathaway*, 949 F.2d 609, 610 (2d Cir. 1991) (per curiam) ("[I]f Vermont's definition of third degree arson substantially corresponds to a modern generic definition of arson, then appellant's conviction may be counted as 'arson' for purposes of the federal sentencing statute."). When determining the generic, contemporary definition of a crime, we look to the general consensus of contemporary state law. *See Taylor*, 495 U.S. at 589.

In its common-law form, the crime of arson was defined as the "malicious burning of the dwelling house of another." John W. Poulos, *The Metamorphosis of the Law of Arson*, 51 Mo. L. Rev. 295, 299 (1986). The common-law offense was intended "to protect the dwellers from the risks of injury or death created when the dwelling house is burned." *Id.* at 297. The contemporary crime of arson, however, is largely a crea-

---

[1]Although *Taylor* involved the meaning of "crime of violence" under the Armed Career Criminal Act rather than under the Guidelines, the language in the Guidelines is essentially identical to the ACCA, and we have consistently looked to *Taylor* and ACCA cases when considering the issue under the Guidelines. *See, e.g.*, *United States v. Seay*, 553 F.3d 732, 737 (4th Cir.), *cert. denied*, 130 S. Ct. 127 (2009).

ture of statute, and those statutes have significantly altered the scope of the crime, focusing on the protection of property as much as people. In most jurisdictions, the crime is no longer limited to dwellings, or even structures. Instead, a clear majority of the states extend the crime of arson to the burning (or damaging by fire or explosion) of personal property. *See United States v. Velasquez-Reyes*, 427 F.3d 1227, 1230-31 & n.2 (9th Cir. 2005) (noting that 36 states extend arson to the burning of personal property); Poulos, 51 Mo. L. Rev. at 384 (noting that in 1986, 31 states defined arson to include the burning of any personal property). Given this statutory development, we agree with the other circuits that have considered the issue and conclude that the modern, generic crime of arson involves the burning of real or personal property.[2] *See United States v. Velez-Alderete*, 569 F.3d 541, 544 (5th Cir. 2009) (per curiam) ("[T]he consensus among state statutes . . . defines contemporary arson as involving the malicious burning of property, personal or real, without requiring that the burning threaten harm to a person."); *Whaley*, 552 F.3d at 907 ("[T]he generic offense of arson, for purposes of the sentence enhancement in § 924(e), has as elements the malicious burning of real or personal property of another."); *Velasquez-*

---

[2]The formulations of the state arson statutes vary in many respects, such as the description of the underlying conduct *compare, e.g.*, Cal. Penal Code §§ 451 ("set[ting] fire to or burn[ing]") *with, e.g.*, Ind. Code § 35-43-1-1 (damaging "by means of fire, explosive or destructive device"); the level of intent required, or whether the value of the property damaged must cross a particular threshold. We do not believe that these variations operate to prevent a consensus on the modern, generic crime of arson. *See United States v. Velasquez-Reyes*, 427 F.3d 1227, 1230-31 (9th Cir. 2005) ("Although some of these statutes add a limitation that the personal property be burned for insurance proceeds, or set a minimum damage limitation, these limits do not disrupt the interstate consensus that the burning of personal property constitutes arson." (citations and internal quotation marks omitted)); *accord United States v. Whaley*, 552 F.3d 904, 906 n.3 (8th Cir. 2009); *cf. Taylor v. United States*, 495 U.S. 575, 589, 590 (1990) (focusing on whether the statute at issue "roughly correspond[s]" to the "modern generic view" of the underlying crime, "regardless of technical definitions and labels under state law" (internal quotation marks omitted)).

*Reyes*, 427 F.3d at 1230, 1231 (explaining that "[t]he modern generic definition of arson includes a 'willful and malicious burning' of property," and noting the "'interstate consensus' that the burning of personal property constitutes arson"); *see also Hathaway*, 949 F.2d at 610 ("The essential element of third degree arson in Vermont is a wilful and malicious burning of personal property. Appellant does not and could not argue that this is an unusual definition of arson." (citation omitted)).

Knight does not disagree with this definition. Instead, she contends that the Texas statute, which includes in its definition the burning of any vegetation on open land, *see* Tex. Penal Code Ann. § 28.02(a)(1), is broader than the generic definition of arson. Knight thus argues that the government was required to establish, through appropriate documents, that she was actually convicted of a crime that meets the generic definition. *See, e.g.*, *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010) ("When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which [qualify as predicate offenses] and some of which do not, the modified categorical approach . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." (internal quotation marks omitted)). Knight contends that the government did not present such documents and that the district court therefore erred by using the arson conviction to increase her base offense level.

We do not believe that the Texas statute is broader than the generic definition simply because it includes in its definition the burning of vegetation. Several states similarly define arson to explicitly include the burning of grass, brush, or other vegetation,[3] and many more states define arson as the burning

---

[3]*See* Cal. Penal Code §§ 450(b), 451; Idaho Code Ann. §§ 18-801(6), 18-804; Miss. Code Ann. § 97-17-13(1); Mont. Code Ann. § 45-6-

of "property" or "any property,"[4] a definition that would certainly seem broad enough to encompass the burning of another person's vegetation. Given the current view of the states as to the kind of activity that constitutes arson, we have no difficulty concluding, as has the Fifth Circuit, that the Texas arson statute substantially corresponds to the generic, contemporary definition of arson. *See Velez-Alderete*, 569 F.3d at 544 (concluding that "the full range of conduct prohibited by the Texas arson statute falls under the generic, contemporary meaning of arson" such that a conviction under the Texas statute is a crime of violence for Guidelines purposes). The district court therefore did not err in relying on Knight's arson conviction to increase her base offense level to 20.

## III.

Knight also contends that the district court erred by concluding that, in light of the obstruction-of-justice enhancement she received for absconding, *see* U.S.S.G. § 3C1.1,[5] she was not entitled to an acceptance-of-responsibility reduction. We disagree.

The Guidelines authorize an offense-level reduction for a defendant who "clearly demonstrates acceptance of responsi-

---

103(1)(a); N.J. Stat. Ann. § 2C:17-1(a)(5) & (f); Ohio Rev. Code Ann. § 2909.03(A)(5); Okla. Stat. tit. 21, § 1403(A); S.C. Code Ann. 16-11-150; Wash. Rev. Code § 9A.48.030.

[4]*See* Ark. Code Ann. § 5-38-301(a)(1); Col. Rev. Stat. § 18-4-103(1); 720 Ill. Comp. Stat. 5/20-1; Ind. Code § 35-43-1-1; La. Rev. Stat. Ann. § 14:52(A); Me. Rev. Stat. Ann. tit. 17-A, § 802(1); Minn. Stat. Ann. § 609.562; Neb. Rev. Stat. § 28-504(1); N.H. Rev. Stat. Ann. § 634:1(I); N.M. Stat. § 30-17-5(A); N.Y. Penal Law § 150.01; Or. Rev. Stat. § 164.315; R.I. Gen. Laws § 11-4-4; S.D. Codified Laws § 22-33-9.2(2); Tenn. Code Ann. § 39-14-303(a); Utah Code Ann. § 76-6-102; Ver. Stat. Ann. tit. 13, § 504; W. Va. Code § 61-3-3; Wi. Stat. § 943.03; Wy. Stat. Ann. § 6-3-102(a).

[5]Knight does not challenge the obstruction enhancement on appeal.

bility for his offense," U.S.S.G. § 3E1.1(a), and a timely guilty plea generally is a strong indication that the defendant has in fact accepted responsibility, *see id.* cmt. n.3 ("Entry of a plea of guilty prior to the commencement of trial . . . will constitute significant evidence of acceptance of responsibility"). As the Guidelines explain, however, conduct that results in an obstruction of justice enhancement "*ordinarily* indicates that the defendant has not accepted responsibility for his criminal conduct." *Id.* cmt. n.4 (emphasis added). Nonetheless, in "extraordinary cases," an acceptance-of-responsibility reduction may be appropriate even in the face of an obstruction-of-justice enhancement. *Id.* The district court here concluded that Knight's was not an extraordinary case, and the court therefore refused to give Knight credit for accepting responsibility even though she pleaded guilty to the felon-in-possession charge.

On appeal, Knight contends that the district court improperly viewed her acceptance of responsibility as beginning when she admitted to the police searching her hotel room that she had a gun. She argues that the district court should have considered the totality of the circumstances and should have concluded that she was entitled to the offense-level reduction because her obstruction—absconding from pre-trial services—was not inconsistent with her decision to accept responsibility, which occurred when she pleaded guilty, not when she confessed during the search of her hotel room. For this argument Knight draws support from cases from the Sixth and Ninth Circuits which seem to suggest that unless the obstruction of justice takes place after the defendant has agreed to plead guilty, the defendant is entitled to the acceptance-of-responsibility reduction. *See United States v. Jeter*, 191 F.3d 637, 641 (6th Cir. 1999) ("[T]here [must] be some conduct that the court can find is inconsistent with that specific acceptance of responsibility referred to in the Commentary, namely the acceptance of the guilty plea. To be denied an acceptance of responsibility reduction for similar crimes committed before federal indictment without some specific finding that

the crimes are inconsistent with that acceptance of responsibility is contrary" to the Guidelines.); *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) ("[A]s long as the defendant's acceptance of responsibility is not contradicted by *an ongoing attempt to obstruct justice*, the case is an extraordinary case within the meaning of Application Note 4 and simultaneous adjustments under §§ 3C1.1 and 3E1.1 are permissible." (emphasis added)).

To the extent that Knight is arguing for the application of a bright-line rule that an acceptance-of-responsibility reduction should be applied so long as the defendant does not obstruct justice *after* agreeing to plead guilty, as suggested by *Hopper* and *Jeter*, her position is inconsistent with our case law, which generally treats the question of whether a defendant who obstructed justice is entitled to an acceptance-of-responsibility reduction as a largely factual matter to be determined by the district court. *See United States v. Miller*, 77 F.3d 71, 74-75 (4th Cir. 1996); *United States v. Murray*, 65 F.3d 1161, 1166 (4th Cir. 1995); *United States v. Hicks*, 948 F.2d 877, 885 (4th Cir. 1991); *see also United States v. Hudson*, 272 F.3d 260, 263-64 (4th Cir. 2001) (accepting the district court's factual determination that the defendant fled because he was scared when he learned the government would not seek a substantial-assistance reduction in his sentence, but concluding, as a matter of law, that defendant's fear of the sentence he would receive did not make the case extraordinary). Moreover, it is clear to us that, contrary to Knight's argument, the district court did consider the totality of the circumstances and did not conclude that the only relevant acceptance of responsibility was that which occurred when Knight admitted in the hotel room that the gun was hers.

The government reviewed all of the facts of the case and specifically argued to the district court that the "totality of the circumstances" showed that Knight was not entitled to acceptance of responsibility. J.A. 34. The district court, after "review[ing] the factual record in th[e] case," J.A. 39, properly

observed that the issue boiled down to the question of whether the facts were extraordinary so as to warrant an acceptance reduction in the face of an obstruction enhancement.

In the course of answering that question, the court observed that Knight's acceptance of responsibility "started" in the hotel room, J.A. 41, an observation that was certainly correct as a factual matter. There is nothing in the court's statements, however, to suggest that the court failed to recognize that the guilty plea itself was also an indication of Knight's acceptance of responsibility. The court simply concluded, after considering all of the facts, that Knight was not entitled to an acceptance-of-responsibility reduction: "[I]nstead of either entering a plea or adjudicating the case, [Knight] decided to run away from the justice system. And she was only brought back into the justice system by an arrest, not by surrender. So she's not entitled to the two-level reduction both legally and factually." J.A. 41-42. Given the facts of this case, we cannot conclude that the district court clearly erred when reaching this conclusion. *See Miller*, 77 F.3d at 74 ("The district court's decision whether to grant a two-level reduction for acceptance of responsibility is a factual determination that we review for clear error."); *see also United States v. Hawley*, 93 F.3d 682, 689-90 (10th Cir. 1996) (affirming denial of acceptance of responsibility to defendant who received an obstruction of justice enhancement for pre-guilty-plea violation of appearance bond: "Conduct amounting to escape or violation of an appearance bond is certainly evidence of failure to accept responsibility, and this fact alone provides adequate foundation for the district court's decision.").

## IV.

Using the Guidelines Sentencing Manual in effect at the time of sentencing, the district court applied a four-level enhancement to Knight's base offense level because the gun she possessed had an obliterated serial number. *See* U.S.S.G. § 2K2.1(b)(4) (2007). The Sentencing Manual in effect at the

time Knight committed the offense, however, provided for a two-level enhancement for possession of a weapon with obliterated serial numbers. *See* U.S.S.G. § 2K2.1(b)(4) (2005). The court's application of the 2007 manual yielded a total offense level of 26, with an advisory sentencing range of 92-115 months, while application of the 2005 manual would have resulted in an offense level of 24 and an advisory sentencing range of 77-96 months. Knight therefore contends that the court's application of the 2007 manual violated the *Ex Post Facto* clause and that resentencing is required. *See United States v. Heater*, 63 F.3d 311, 331 (4th Cir. 1995) ("[A]mendments to the Guidelines occurring after a defendant's offense but before sentencing should not be applied if doing so would increase the sentence, because that would violate the Ex Post Facto Clause . . . ."); U.S.S.G. § 1B1.11(b)(1) (2007) ("If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.").

Knight did not raise this issue below, and she concedes that we must therefore review her claim for plain error only. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Before we will consider reversing under plain-error review, "(1) there must be an error; (2) the error must be plain, meaning obvious or clear under current law; and (3) the error must affect substantial rights." *United States v. Wallace*, 515 F.3d 327, 332 (4th Cir. 2008). It is the appellant, not the government, who bears the burden of establishing each of these elements. *See United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009). And even if the defendant establishes each of these elements, "[t]he decision to correct the error lies within our discretion, and we exercise that discretion only if the error 'seriously affects the fairness,

integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

The government first argues that there was no error, plain or otherwise, because application of the Guidelines post-*Booker* simply does not implicate the *Ex Post Facto* clause. *See United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006) (concluding that since *Booker* and its progeny gave sentencing courts "unfettered" freedom in imposing sentence, application of a more onerous Guideline provision could no longer be viewed as creating an ex post facto problem: "[T]he ex post facto clause should apply only to laws and regulations that bind rather than advise."). This court, however, has recently rejected the *Demaree* analysis and reaffirmed our pre-*Booker* view that application of a post-offense Guidelines Manual that increases the advisory sentencing range violates the *Ex Post Facto* clause. *See United States v. Lewis*, ___ F.3d ___, No. 09-4343 (4th Cir. filed May 27, 2010). *Lewis* thus forecloses the government's claim that there was no error.

Alternatively, the government contends that any error by the district court was not plain. The government argues that, as evidenced by the Seventh Circuit's decision in *Demaree*, *Booker* called into doubt the legal premise upon which *Heater*'s *Ex Post Facto* analysis was based, and that the district court therefore did not plainly err by applying the 2007 Manual. We disagree. Even if the law was uncertain at the time of sentencing, *Lewis* has now settled the question, thus making the error plain. *See Johnson v. United States*, 520 U.S. 461, 468 (1997) (explaining that an error is plain if the legal issue is settled at the time of appeal, even if it was not settled at the time of trial); *United States v. Cannady*, 283 F.3d 641, 648 (4th Cir. 2002) ("Because the law changed between the time of the plea and this appeal, we treat the district court's now-incorrect information as plain error."). We therefore conclude that the district court's application of the 2007 manual was plain error. The question, then, is whether this error affected Knight's substantial rights.

An error affected a defendant's substantial rights if the error "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734; *accord United States v. McClung*, 483 F.3d 273, 276 (4th Cir. 2007). To satisfy this requirement in the sentencing context, the defendant must show that he would have received a lower sentence had the error not occurred. *See United States v. White*, 405 F.3d 208, 223 (4th Cir. 2005) (explaining that district court's erroneous application of the guidelines as mandatory affected his substantial rights only if the record reveals a "nonspeculative basis for concluding that the treatment of the guidelines as mandatory affected the district court's selection of the sentence imposed" (internal quotation marks and alteration omitted)); *see also, e.g.*, *United States v. John*, 597 F.3d 263, 284-85 (5th Cir. 2010) ("A sentencing error affects a defendant's substantial rights if he can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." (internal quotation marks and alteration omitted)).

Knight contends that the district court's comparison of her to another defendant sentenced by the district court that same day shows that the court's error affected the sentence she received. The district court noted that the other defendant had a much worse record than Knight and that the government gave that defendant a "very favorable deal . . . that reduced his exposure from something in the neighborhood of 20 to 25 years down to ten years." J.A. 66. As the court explained, "that makes the Court compare you to him just because of the proximity in time. And you are not as dangerous a threat to society as he was." J.A. 66. Relying on these comments, Knight argues that the district court sentenced the other defendant to "roughly half" of his Guideline range and then sentenced Knight to "roughly half" of the (incorrectly calculated) Guidelines range—60 months, against a sentencing range of 92-115 months. Brief of Appellant at 25. Knight therefore contends that if the district court had correctly calculated her offense level, the court would have sentenced her to "roughly

half" of the 77-96 month range, which would have been lower than the 60-month sentence she received.

If the court had explicitly connected Knight's sentence to the sentence given to the other defendant—for example, by saying that it believed Knight was entitled to a similar sentence reduction—that might well have been enough to show that Knight would have received a lower sentence but for the error in calculating the advisory range. Similarly, it might have been enough to satisfy Knight's plain-error burden if the district court had explicitly connected the 60-month sentence ultimately imposed to the advisory range—for example, by stating that it intended to impose a sentence that was a certain percentage of the low or high end of the advisory range. The district court, however, made no such statements, and it is pure speculation to assign to the court's limited statements about the other defendant the meaning urged by Knight. *See White*, 405 F.3d at 223 (requiring under plain-error review a "*nonspeculative* basis" for concluding that the challenged error "affected the district court's selection of the sentence imposed" (emphasis added; alteration and internal quotation marks omitted)). And when we consider the entirety of the district court's statements at sentencing, it becomes apparent that the district court imposed the 60-month sentence to ensure that Knight had the opportunity to receive intensive vocational training that the court believed would benefit her.

The court noted that Knight had been working in the "adult entertainment" field, which was not necessarily the best choice for a convicted felon like Knight. *See* J.A. 67 ("Being in adult entertainment might be a lucrative business but it's not necessarily a good business for someone that has a [felony conviction], because . . . . sometimes close to adult entertainment is illegal conduct . . . ."). The court believed that Knight needed to receive vocational training while in prison so that she could get "away from [a] business that . . . can be close to criminal conduct." J.A. 67. The court stated that if Knight took the opportunity seriously, the Bureau of Prisons would

provide her with "vocational and educational training that [would] help [her] re-enter society as a productive member of society." J.A. 68. The district court explained, however, that it needed to impose a sentence "that gives you enough time in prison to learn a new vocation," J.A. 67, noting that "if you sit in prison for a year or two like you have in the past, a year-long imprisonment isn't adequate to really truly learn a vocational skill to the degree that would make you employable." J.A. 68. The court concluded that a variance sentence was appropriate because the "Guideline range is high for the nature and circumstances of the particular offense and the history and characteristics of this defendant," J.A. 68, but noted that

> it's got to be a variance that still provides for a meaningful punishment and a meaningful period for training and vocational skills, for the learning of vocational skills that will allow Ms. Knight to return and re-enter into society [as] a productive member of society. So the Court intends to vary to a degree that it thinks will provide for that rehabilitation training, as well as the need to punish the defendant and to deter the defendant from further criminal conduct.

J.A. 68-69. The court then sentenced Knight to 60 months' imprisonment, "a sentence [the court] believe[d was] sufficient but not greater than necessary to accomplish the goals of sentencing and the sentencing factors." J.A. 69.

As we have noted, this issue is before us on plain-error review, which means that there must be a nonspeculative basis in the record to conclude that the district court would have imposed a lower sentence but for the error in calculating Knight's offense level. We see nothing in the record sufficient to satisfy this burden. To the contrary, the district court's explanation of the sentence suggests that the court would *not* have imposed a sentence of less than 60 months even if the correct sentencing range had been used. Because Knight can-

not demonstrate that the sentencing error violated her substantial rights, we cannot correct the error.

V.

To summarize, we conclude that the district court properly treated Knight's arson conviction in Texas as a crime of violence under U.S.S.G. § 2K2.1(a)(4)(A), and we find no error in the district court's decision to deny Knight an acceptance-of-responsibility reduction after increasing her offense level for obstruction of justice. And while we conclude that the district court erred by applying the four-level enhancement for obliterated serial numbers found in the 2007 Guidelines manual rather than the two-level enhancement contained in the 2005 manual, Knight cannot show under plain-error review that she was prejudiced by that error. Accordingly, for the foregoing reasons, Knight's sentence is hereby affirmed.

*AFFIRMED*