**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 14-4444**

─────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MICHAEL EUGENE HARDISON, a/k/a Hook Shot,

Defendant – Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:95-cr-00083-BO-1)

─────────────

Argued: May 12, 2015                    Decided: July 7, 2015

─────────────

Before MOTZ, KING, and THACKER, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

**ARGUED:** Robert Earl Waters, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 1996, Michael Eugene Hardison was sentenced in the Eastern District of North Carolina to 204 months in prison and five years of supervised release, following his convictions for drug- and gun-related offenses. Hardison was released from prison and began his term of supervised release in March 2010, and in May 2013 the district court ruled that Hardison had violated the conditions of his release by engaging in criminal conduct relating to drug distribution. Supervised release was therefore revoked, and the court imposed a statutory maximum revocation sentence of sixty months. Hardison has appealed that sentence, contending that it is both procedurally and substantively unreasonable. As explained below, we affirm.

I.

Hardison's convictions were the denouement of a lengthy federal investigation into a Fayetteville, North Carolina drug distribution network known as the "Long Road Boys." Hardison had cofounded the Long Road Boys in 1989, recruiting residents of the Grove View Terrace public housing project to peddle powder cocaine and cocaine base ("crack"). From the network's inception, Hardison and his partners-in-crime embarked on a campaign of violence and intimidation against rival drug distributors to protect and expand their criminal enterprise.

3

More specifically, Hardison instigated and perpetuated so-called "turf wars" by arming his employees with semiautomatic weapons and ordering them to shoot rival distributors.

On May 18, 1995, a federal grand jury in the Eastern District of North Carolina indicted Hardison and eleven other Long Road Boys on twenty drug and weapons offenses. The indictment charged Hardison in five counts and identified him as the group's ringleader. On September 11, 1995, Hardison pleaded guilty to conspiracy to possess with intent to distribute cocaine and crack, in violation of 21 U.S.C. § 846, and to using a firearm during and in relation to a drug trafficking crime, in contravention of 18 U.S.C. §§ 924(c)(1) and 2. On April 9, 1996, Hardison was sentenced to 204 months in prison, to be followed by five years of supervised release. Hardison's term of supervised release was subject to several conditions, including that he submit to drug-screen urinalysis and refrain from criminal conduct. Hardison was released from confinement in March 2010 and commenced his term of supervised release.

On September 11, 2013, after serving more than three years of supervised release without incident, Hardison submitted a urine sample that was positive for cocaine. His probation officer thus filed a motion to revoke Hardison's supervised release. On November 15, 2013, the district court conducted a revocation hearing and determined that Hardison had violated the

4

terms of his supervision. Nevertheless, the court denied revocation, determining that "the ends of justice would best be served by . . . continuing supervision under the original terms and conditions imposed." J.A. 27.[1]

On April 21, 2014, the probation officer filed a second motion for revocation of supervised release, followed by an amended motion two days later. The probation officer alleged that Hardison had recently committed numerous drug and weapons offenses in Cumberland County in violation of the terms of his supervised release. The probation officer did not, however, submit a worksheet containing a recommended sentencing range for Hardison.

The district court conducted a second revocation hearing on May 30, 2014, and the prosecution called Officer Aaron Hunt of the Fayetteville Police Department as a witness. Hunt testified that he first became aware of Hardison in early 2014 during the course of a narcotics investigation. Hunt had witnessed Hardison "continuously hanging out" at two Fayetteville residences where suspected drug activity was taking place. See J.A. 15. Hunt was informed that Hardison was the "main guy who brought all the narcotics to [Hunt's] target houses," and he

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

opened a formal investigation into Hardison's activities. See id. at 16. Over the next six weeks, Hunt observed Hardison engage in numerous hand-to-hand drug transactions with passing vehicles. On arresting one of the buyers, Hunt was advised that the arrestee had purchased cocaine from Hardison.

According to Officer Hunt, on April 21, 2014, the Fayetteville police executed a search warrant on Hardison's home, seizing several items inside the residence that were "indicative of manufacturing and packaging narcotics for sale." See J.A. 18-19. Officers also found 25.3 grams of crack and a Colt .38 special revolver hidden in plastic bags behind the residence. Based on Hunt's evidence, the district court ruled that Hardison had violated the terms of his supervised release by possessing with intent to sell and deliver cocaine and crack, maintaining a place for the manufacture of cocaine, and possessing a firearm.

Hardison admitted his criminal conduct but offered several arguments in mitigation, seeking a lenient sentence. He emphasized that he was nearing the end of his five-year term of supervised release, and had only one prior violation. He also asserted that he had been gainfully employed and had a close relationship with his siblings. Finally, Hardison pointed out that his employer was present at the hearing and had submitted a letter on Hardison's behalf.

The district court denied Hardison's request for leniency, invoking Hardison's earlier revocation hearing. The court explained:

> Did [Hardison] not understand that [the court's prior leniency] was an exercise in trust, T-R-U-S-T, that the court was willing to take a chance, which turned out to be a foolish chance and a repudiated chance, and that the court and the government and the law put their trust in him to be sincere about his willingness to avoid crime and drugs and be a drug person. And now he's proven all of that to be mistaken. So the punishment has to be equivalent to the breach of trust and multiple violations.

J.A. 22. The court underscored that Hardison had made an "absolute mockery" of the supervised release system, id. at 24, observing that

> [Hardison] really has virtually no sympathy or position to argue here. He's completely without any credibility, just totally without any credibility. He had a serious sentence that he did and now he's been back twice on revocation . . . . He should get the maximum punishment.

Id. at 23.

The district court then imposed the statutory maximum sentence of sixty months in prison.[2]  That same day, the court entered a written order setting forth its rationale for imposing the statutory maximum sentence. See United States v. Hardison, No. 5:95-cr-00083 (E.D.N.C. May 30, 2014), ECF No. 402. The

---

[2] Hardison's statutory maximum revocation sentence was sixty months because his conspiracy conviction was a class A felony. See 18 U.S.C. §§ 3583(e)(3), 3559(a)(1).

7

court explained therein that Hardison was charged with violating the terms of his supervised release by engaging in the "same or similar" conduct that had formed the basis of his underlying convictions. Id. at 2. The court further noted that neither the 204-month sentence nor the court's prior leniency had been sufficient to deter Hardison from engaging in the sale of illegal narcotics, and that the maximum sentence was needed to protect the public from Hardison. Id. Finally, the court considered and rejected Hardison's various arguments in mitigation. Id.

It is uncontested that the policy statements in Chapter Seven of the Sentencing Guidelines called for Hardison to receive a revocation sentence of thirty-seven to forty-six months in prison.[3] The district court, however, made no explicit reference to that sentencing range during the revocation hearing or in its subsequent order. Additionally, neither Hardison nor the government argued for a specific revocation sentence or referenced the policy statement range. Hardison failed to object to the revocation sentence imposed by the court.

---

[3] Hardison's policy statement range called for thirty-seven to forty-six months in prison because he committed a Grade A violation of his release and had a criminal history category of IV. See USSG § 7B1.1(a)(1) (2012).

Hardison has timely appealed, contending that the revocation sentence is plainly unreasonable. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

We are not to vacate a revocation sentence "if it is within the statutory maximum and is not 'plainly unreasonable.'" United States v. Webb, 738 F.3d 638, 640 (4th Cir. 2013) (quoting United States v. Crudup, 461 F.3d 433, 438 (4th Cir. 2006)). The proper inquiry first assesses whether the sentence was either procedurally or substantively unreasonable. See Crudup, 461 F.3d at 438-39. If the sentence is unreasonable on either ground, we must also identify whether it was "plainly" so. Id. at 439.

Where a defendant fails to preserve a claim of error in the sentencing court, we review the issue for plain error only. See Webb, 738 F.3d at 640-41. To satisfy plain error review, the appellant bears the burden of establishing that (1) the district court erred; (2) the error was "plain"; and (3) the error "affect[ed his] substantial rights." United States v. Olano, 507 U.S. 725, 732 (1993). If the three-part plain error test is satisfied, we must decide whether to cure the error, "and should not do so unless the error 'seriously affects the fairness,

9

integrity or public reputation of judicial proceedings.'" United States v. Hargrove, 625 F.3d 170, 184 (4th Cir. 2010) (quoting Olano, 507 U.S. at 736).

                            III.

On appeal, Hardison challenges the procedural reasonableness of his revocation sentence on the ground that the district court failed to consider his policy statement range of thirty-seven to forty-six months prior to imposing a maximum revocation sentence of sixty months. Hardison also maintains that the revocation sentence was substantively unreasonable, in that the court failed to adequately justify its decision to deviate from the policy statement range.

                            A.

In deciding whether to revoke a term of supervised release, a district court is guided by policy statements contained in Chapter Seven of the Guidelines, as well as the statutory factors applicable to revocation sentences under 18 U.S.C. §§ 3553(a) and 3583(e). Chapter Seven instructs that a court should fashion a revocation sentence to "sanction primarily the breach of [the court's] trust." USSG ch. 7, pt. A(3) (2012). Chapter Seven also provides for a policy statement range that is calculated on the basis of the severity of the underlying violation as well as the defendant's criminal

10

history.  See id. § 7B1.4.  Section 3583(e) of Title 18, which governs supervised release, further directs a court to consider factors enumerated in § 3553(a) prior to imposing a revocation sentence, including the sentencing range established by the applicable policy statements, the need to deter future criminal conduct, and the need to protect the public from further criminal activity.  See 18 U.S.C. § 3553(a)(2)(B)-(C), (a)(4).

Hardison challenges the procedural reasonableness of his revocation sentence on the ground that the district court failed to consider his policy statement range.  Applying a plain error standard of review, we first assess whether an error occurred — that is, was Hardison's sentence procedurally unreasonable.  The Supreme Court has recognized that a court imposes a procedurally unreasonable sentence if it commits a "significant procedural error" in the course of sentencing, including "failing to calculate . . . the Guidelines range."  Gall v. United States, 552 U.S. 38, 51 (2007).  We have applied that principle to supervised release violations, ruling that a court "must consider . . . the policy statement range" when imposing a revocation sentence.  See United States v. Moulden, 487 F.3d 652, 656 (4th Cir. 2007); see also Gall, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." (emphasis added)).

11

Notably, the record gives no indication that the district court considered Hardison's policy statement range of thirty-seven to forty-six months. The court failed to reference that range at the revocation hearing or in its written revocation order, and neither Hardison's probation officer nor his counsel alerted the court to the policy statement range. Cf. United States v. Davis, 53 F.3d 638, 642 (4th Cir. 1995) (determining that revocation sentence was not procedurally unreasonable when, although not mentioning policy statement range, court referenced range specified in probation officer's worksheet and counsel's argument, thus showing that range was in court's contemplation). In this situation, we cannot say that the range was within the court's contemplation at sentencing. Accordingly, we conclude that the court committed a procedural error, thereby rendering its sentence procedurally unreasonable. The first prong of plain error review is thus satisfied.

Next, we must decide whether the error was plain, which in this case requires an assessment of whether Hardison's procedurally unreasonable sentence was also plainly unreasonable. See United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006). In conducting that inquiry, we apply the definition of "plain" from our plain error principles. Id. Thus, a sentence can only be plainly unreasonable if the sentencing error is "clear" or "obvious," id., in that the

12

sentence "run[s] afoul of clearly settled law," United States v. Thompson, 595 F.3d 544, 548 (4th Cir. 2010). We have authority for the proposition that a revocation sentence imposed absent consideration of the applicable policy statement range is procedurally unreasonable. See, e.g., Moulden, 478 F.3d at 656; Crudup, 461 F.3d at 440 (deeming revocation sentence procedurally reasonable because court expressly considered advisory range). By failing to consider the policy statement range prior to sentencing, the district court imposed a plainly unreasonable sentence. Thus, Hardison has also satisfied the second prong of plain error review.

The determination that the district court imposed a plainly unreasonable sentence does not end our inquiry. We next assess whether the court's plain error affected Hardison's substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993). To satisfy Olano's third prong in the context of a revocation sentencing, Hardison "must show that he would have received a lower sentence had the error not occurred." See United States v. Knight, 606 F.3d 171, 178 (4th Cir. 2010); see also United States v. McLaurin, 764 F.3d 372, 388 (4th Cir. 2014) (explaining that there must be nonspeculative basis in record to conclude lower sentence would have been imposed). This is the prong where Hardison fails, in that he has not shown a nonspeculative basis upon which to vacate his sentence.

13

Indeed, the court was unequivocal in its determination that Hardison had "no sympathy or position to argue" as a result of his earlier breach of the court's trust, and that Hardison had made an "absolute mockery" of the supervised release system. See J.A. 23; cf. McLaurin, 764 F.3d at 388 (vacating sentence where district court expressed serious concern with advisory Guidelines range). The court specifically concluded that Hardison should receive the "maximum punishment," see J.A. 23, referring to the statutory maximum sentence of sixty months. It would thus be "pure speculation" for us to decide that the sentencing court would have imposed a lower sentence if it had considered Hardison's policy statement range. See Knight, 606 F.3d at 179. In these circumstances, Hardison's substantial rights have not been affected, and his procedural unreasonableness contention does not satisfy plain error review.

B.

Hardison also contends that his revocation sentence was substantively unreasonable because the district court failed to adequately explain why his sentence was substantially in excess of the policy statement range. In the context of a revocation sentencing, the district court's explanation of its sentence "need not be as specific" as that required for a sentence which departs or varies from a traditional Guidelines range. See Moulden, 478 F.3d at 657 (internal quotation marks omitted). We

14

will therefore uphold a revocation sentence as substantively reasonable if the court has "sufficiently stated a proper basis for its conclusion." See Crudup, 461 F.3d at 440. In Crudup, we affirmed the imposition of the statutory maximum sentence as substantively reasonable, notwithstanding the fact that it exceeded the applicable policy statement range. See id. In so ruling, we observed that the court based its sentence on several relevant factors, including that the defendant had committed numerous violations of his supervised release, despite having previously received leniency from the court. See id. Similarly, in Hardison's revocation hearing, the court emphasized that, after receiving leniency from the court, Hardison abused the court's trust in an egregious fashion. The court also observed and emphasized that Hardison had committed multiple violations of his conditions of supervised release, including selling cocaine and unlawfully possessing a firearm.

By its revocation order, the district court relied on several pertinent § 3553(a) factors for imposing the maximum sentence. Emphasizing the § 3553(a)(2)(B) factor of deterrence, the court observed that a lengthy sentence was required because "neither [Hardison's] prior conviction and sentence of 204 months' imprisonment nor this Court's leniency in permitting him to continue on supervision . . . were sufficient to cause him to refrain from engaging in the sale of illegal narcotics." United

States v. Hardison, No. 5:95-cr-00083, at 2 (E.D.N.C. May 30, 2014), ECF No. 402. The court also explained, invoking § 3553(a)(2)(C), that the maximum sentence was required to protect the public from further crimes by Hardison. Id. Finally, the court balanced the statutory considerations against Hardison's arguments in mitigation, stating:

> The Court has further considered the arguments by defendant's counsel presented in mitigation, and finds they do not outweigh the need for adequate deterrence and protection of the public. Indeed, counsel's argument that defendant has been on supervision for four years with only one earlier violation is strongly undercut by the testimony of the investigating officer that this defendant was a known drug dealer in a high crime area.

Id. In sum, the court had multiple reasons for its imposition of the statutory maximum sentence, and explicitly considered and rejected all arguments in mitigation. The court's explanation was more than sufficient and therefore substantively reasonable. Accordingly, Hardison's substantive unreasonableness contention fails on the first prong of plain error review, in that the revocation sentence was not substantively unreasonable and thus not in error.

IV.

Pursuant to the foregoing, we affirm the revocation sentence of the district court.

AFFIRMED

16