**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4531

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

BRYSHUN GENARD FURLOW,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, Senior District Judge.  (3:17-cr-00862-CMC-1)

Argued:  March 21, 2019                                    Decided:  June 27, 2019

Before WILKINSON and KING, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed by published opinion.  Judge King wrote the opinion, in which Judge Wilkinson and Senior Judge Duncan joined.

**ARGUED:**  Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Robert Frank Daley, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  Sherri A. Lydon, United States Attorney, Stacey D. Haynes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

KING, Circuit Judge:

Defendant Bryshun Genard Furlow pleaded guilty in the District of South Carolina to a single count of possession with intent to distribute cocaine and methamphetamine, and also to possession of a firearm and ammunition as a convicted felon. After ruling that Furlow is an "armed career criminal" pursuant to the Armed Career Criminal Act (the "ACCA") and a "career offender" under the Sentencing Guidelines, the district court sentenced him to 180 months in prison. On appeal, Furlow maintains that he does not have the requisite number of predicate convictions for those sentencing enhancements. More specifically, he contends that the court erred in ruling that his prior felony convictions for distribution of crack cocaine in South Carolina and first-degree arson in Georgia are proper predicates under the ACCA and the Guidelines career offender provision. As explained below, we reject those contentions and affirm.

I.

A.

Furlow's appeal concerns his designations as an "armed career criminal" under the ACCA (codified at 18 U.S.C. § 924(e)) and as a "career offender" pursuant to section 4B1.1 of the Sentencing Guidelines (the "career offender provision"). Both the ACCA and the career offender provision prescribe sentencing enhancements for certain federal offenses. They differ, however, in that the ACCA is a Congressional enactment binding

2

on the federal courts, while the career offender provision is an advisory guideline promulgated by the United States Sentencing Commission.[1]

Under the ACCA, a defendant designated as an "armed career criminal" and convicted of the federal offense of possessing a firearm or ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), is subject to a minimum sentence of fifteen years and a maximum sentence of life in prison. *See* 18 U.S.C. § 924(e)(1). Absent an ACCA enhancement, however, the section 922(g)(1) offense has no mandatory minimum and is punishable by a maximum of ten years. *See id.* § 924(a)(2). A defendant is properly designated as an armed career criminal if he has three prior "violent felony" or "serious drug offense" convictions. *See id.* § 924(e)(1).

In contrast to the ACCA's establishment of a fifteen-year mandatory minimum, the career offender provision creates no statutory penalty. A defendant who qualifies for an enhancement under that provision, however, may be subject to an increased Guidelines offense level and criminal history category, which would result in an increased advisory Guidelines range. *See* USSG § 4B1.1(b). A defendant is appropriately designated as a career offender, under Guidelines section 4B1.1, if his "instant [federal] offense of conviction" is a "crime of violence" or a "controlled

---

[1] The Sentencing Commission is an agency within the federal judicial branch that Congress has tasked with promulgating "guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case." *See* 28 U.S.C. § 994(a)(1). The Guidelines are published in the United States Sentencing Guidelines Manual.

substance offense," and if he has two prior convictions for such offenses. *See* USSG § 4B1.1(a).

In assessing whether an offense constitutes a predicate for purposes of the ACCA or the career offender provision, a court looks to the various definitions of qualifying convictions contained in the ACCA and the Guidelines. As pertinent in this appeal, the ACCA "violent felony" definition and the Guidelines "crime of violence" definition are identical, in that they each enumerate "arson" as a qualifying predicate. *See* 18 U.S.C. § 924(e)(2)(B)(ii); USSG § 4B1.2(a)(2). The ACCA definition of a predicate "serious drug offense" and the Guidelines definition of a predicate "controlled substance offense" are likewise similar:

- The ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law," *see* 18 U.S.C. § 924(e)(2)(A)(ii); and

- The Guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense," *see* USSG § 4B1.2(b).

B.

1.

In these proceedings, a grand jury in the District of South Carolina returned an October 2017 indictment charging Furlow with six offenses, including possession with intent to distribute cocaine and methamphetamine, in violation of 21 U.S.C. § 841(a)(1),

4

and possession of a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Furlow thereafter moved the district court for a pretrial determination as to whether — if found guilty of certain charges in the indictment — he would be designated as an armed career criminal under the ACCA, a career offender under the Guidelines, or both.

In response to Furlow's pretrial request, the government filed an information alleging certain of his prior felony convictions. The information specified that Furlow had been convicted in Georgia for the felony offenses of possession with intent to distribute cocaine and possession with intent to distribute marijuana in 2003, and two counts of first-degree arson in 2008. The information further alleged that Furlow had been convicted in South Carolina for felony distribution of crack cocaine in 2016.

In March 2018, the district court conducted a pretrial conference and informed Furlow that it had preliminarily determined that he was "most likely" an armed career criminal and a career offender. *See* J.A. 101.[2] About a month later, Furlow pleaded guilty to two offenses: possession with intent to distribute cocaine and methamphetamine, and possession of a firearm and ammunition as a convicted felon. Following Furlow's guilty pleas, the probation officer prepared a presentence report (the "PSR") recommending that the court designate Furlow as an armed career criminal. This recommendation was based on Furlow's two Georgia drug convictions (which the PSR

---

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

5

counted as a single ACCA predicate), his two Georgia first-degree arson convictions (which the PSR also counted as a single predicate), and his South Carolina distribution of crack cocaine conviction.[3] The PSR also suggested that the court apply the career offender provision because Furlow had pleaded guilty in these proceedings to a "controlled substance offense" (that is, possession with intent to distribute cocaine and methamphetamine) and had been previously convicted of arson and distribution of crack cocaine.

2.

At the July 2018 sentencing hearing in Columbia, Furlow objected to the PSR's armed career criminal and career offender classifications. Insofar as the PSR counted his Georgia arson convictions as a predicate for the ACCA and the career offender provision, Furlow asserted that the term "arson" — as used in the ACCA definition of "violent felony" and in the Guidelines definition of "crime of violence" — is unconstitutionally vague. For that reason (and that reason only), Furlow contended that his arson convictions should not be counted as a predicate.[4]

---

[3] The PSR counted certain of Furlow's convictions as a single ACCA predicate offense because he committed those crimes on the same occasion. *See* 18 U.S.C. § 924(e)(1) (requiring that predicates be "committed on occasions different from one another" in order to be counted separately).

[4] As discussed below, Furlow presents in this appeal an entirely different challenge to the use of his Georgia arson convictions as a predicate for the ACCA and career offender provision. That is, he abandons his due process vagueness claim and instead pursues a claim that the elements of the Georgia arson offenses for which he was convicted are broader than the elements of the "generic" offense of arson, as enumerated in the ACCA and the Guidelines.

6

In addition, Furlow maintained that — contrary to the PSR's suggestion — his South Carolina conviction for distribution of crack cocaine was neither a "serious drug offense" under the ACCA nor a "controlled substance offense" under the Guidelines. According to Furlow, the South Carolina statute under which he was convicted, S.C. Code Ann. § 44-53-375(B), criminalizes a broader swath of conduct than that encompassed by the definitions of "serious drug offense" and "controlled substance offense." Specifically, Furlow asserted that section 44-53-375(B) of the South Carolina Code proscribes the mere purchase of a controlled substance. For those reasons, Furlow argued that he did not have the requisite number of predicate convictions for the armed career criminal and career offender designations.

The district court rejected Furlow's arguments and adopted the PSR's recommendation that he is both an armed career criminal and a career offender. In assessing Furlow's contentions, the court applied the so-called "modified categorical approach" to the state statutes proscribing the relevant Georgia arson offenses and the South Carolina distribution of crack cocaine offense. That approach is proper when: (1) a state criminal statute is "divisible" — or in other words, when the statute "list[s] elements in the alternative . . . thereby defin[ing] multiple crimes" — and (2) at least one of those crimes has elements that match the elements of a predicate offense specified in the ACCA or the Guidelines, but another of those crimes does not. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). In applying the modified categorical approach, a federal court may look to certain state court documents to determine "what crime, with what elements, [the] defendant was convicted of." *Id.* The court must then compare the

7

elements of the defendant's crime of conviction with the elements of the ACCA or Guidelines predicate offense, and — if the court determines that the elements match — the defendant's prior conviction supports the pertinent sentencing enhancement. *Id.*

With respect to Furlow's arson convictions, the district court reviewed Georgia's first-degree arson statute, that is, section 16-7-60(a) of the Code of Georgia. The court accepted the government's assertion that section 16-7-60(a) is divisible as a result of its five subsections and that at least one of the crimes defined therein has the same elements as the "generic" offense of arson enumerated in the ACCA "violent felony" definition and the Guidelines "crime of violence" definition. Consequently, the court reviewed several state court documents related to Furlow's arson convictions and determined that he had been twice convicted under subsection (1) of section 16-7-60(a), for using fire to "knowingly damag[e] the dwelling house of another individual." *See* J.A. 181. Because the court concluded that the elements of section 16-7-60(a)(1) matched the elements of generic arson, the court ruled that Furlow's Georgia offenses are an ACCA and a career offender predicate.[5]

As to Furlow's South Carolina conviction for distribution of crack cocaine, the district court looked to section 44-53-375(B) of the South Carolina Code. The court explained that the modified categorical approach applies to section 44-53-375(B) because

---

[5] In ruling that Furlow's Georgia arson convictions are a proper predicate for the ACCA and career offender provision, the district court implicitly rejected Furlow's sole challenge to counting those convictions, that is, his constitutional due process vagueness contention. Again, the vagueness claim is not pursued on appeal.

it creates several different crimes, with at least one of those crimes having elements that match those of an ACCA "serious drug offense" and a Guidelines "controlled substance offense." Utilizing that approach, the court reviewed certain state court documents related to Furlow's South Carolina conviction under section 44-53-375(B) and concluded that Furlow in fact pleaded guilty to distribution of crack cocaine in Lexington County, South Carolina. The court then compared the elements of Furlow's South Carolina offense with the federal definitions of "serious drug offense" and "controlled substance offense" and found a match. It was thus satisfied that Furlow's South Carolina conviction is a proper predicate for the armed career criminal and career offender designations.

In sum, the district court premised its ACCA ruling on Furlow's two Georgia drug convictions, which the court identified as a single predicate; his two Georgia arson convictions, which the court also counted as a single predicate; and his South Carolina distribution of crack cocaine conviction. As for the career offender designation, the court relied on Furlow's arson and distribution of crack cocaine convictions. Based on that designation, the court calculated a total offense level of 31 and placed Furlow in a criminal history category of VI, resulting in an advisory Guidelines range of 188 to 235 months.[6] The court varied downward from the advisory range and sentenced Furlow to

---

[6] According to the probation officer who prepared the PSR, Furlow's advisory Guidelines range might have been as low as 46 to 57 months without the career offender designation.

9

concurrent terms of 180 months in prison.[7]  Furlow has appealed the criminal judgment, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

On appeal, Furlow contests the district court's reliance on his South Carolina distribution of crack cocaine conviction and his Georgia first-degree arson convictions to support the armed career criminal and career offender designations.  We review de novo a legal question of whether a prior conviction qualifies as a predicate for the ACCA or career offender provision.  *See United States v. Kerr*, 737 F.3d 33, 35 (4th Cir. 2013) (explaining that de novo review applies to whether prior state conviction constitutes predicate under ACCA); *United States v. Jones*, 667 F.3d 477, 482 (4th Cir. 2012) (explaining same for Guidelines career offender provision).  When a defendant has not properly preserved an issue by presenting it to the district court, however, we review his appellate contention for plain error only.  *See United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012).

---

[7] Because Furlow was designated as an armed career criminal, the mandatory minimum sentence for his section 922(g)(1) conviction was 180 months.  Without the ACCA enhancement, the maximum sentence for that offense would have been 120 months.

10

III.

A.

Furlow first contends that the district court erred in ruling that his conviction for distribution of crack cocaine in South Carolina constitutes a predicate for the armed career criminal and career offender enhancements. According to Furlow, we are obliged to apply the "categorical approach" — as opposed to the modified categorical approach utilized by the district court — to the South Carolina statute under which he was convicted, that is, section 44-53-375(B) of the South Carolina Code. Furlow argues that section 44-53-375(B) creates a single drug offense and specifies different means of committing that offense. Because one of those means is the mere "purchase" of a controlled substance, Furlow maintains that his conviction under section 44-53-375(B) does not categorically qualify as an ACCA "serious drug offense" nor a Guidelines "controlled substance offense." On the other side, the government asserts that the court correctly applied the modified categorical approach and properly ruled that Furlow's conviction pursuant to section 44-53-375(B) constitutes a predicate for each designation. Because Furlow properly preserved this issue in the district court, we review it de novo. *See United States v. Kerr*, 737 F.3d 33, 35 (4th Cir. 2013); *United States v. Jones*, 667 F.3d 477, 482 (4th Cir. 2012).

1.

a.

Generally, we use the categorical approach when assessing whether a state crime constitutes a "serious drug offense" under the ACCA or a "controlled substance offense"

11

under the Guidelines. *See United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (Guidelines); *United States v. Williams*, 326 F.3d 535, 538 (4th Cir. 2003) (ACCA). In making a categorical approach analysis, we are obliged to "focus on the elements, rather than the facts, of the prior offense." *See United States v. Shell*, 789 F.3d 335, 338 (4th Cir. 2015) (alteration and internal quotation marks omitted). Under that approach, we address only whether "the elements of the prior offense . . . correspond in substance to the elements of the . . . offense" defined by the ACCA or the Guidelines. *See Dozier*, 848 F.3d at 183 (alterations and internal quotation marks omitted).

As related above, a modification to the categorical approach is appropriate when a state statute is divisible (i.e., specifies elements in the alternative, thereby defining multiple offenses), and at least one of the crimes defined therein has elements that match the elements of an offense specified in the ACCA or the Guidelines, but another of those crimes does not. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). To determine divisibility, it is important to understand the distinction between the elements of an offense and the means of committing an offense. *See id.* at 2256. The "elements" of an offense "are the constituent parts of a crime's legal definition — the things the prosecution must prove to sustain a conviction." *Id.* at 2248 (internal quotation marks omitted). As the Supreme Court has emphasized, "[a]t a trial, [elements] are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, [elements] are what the defendant necessarily admits when he pleads guilty." *Id.* (citations omitted). By contrast, "means" are the "various factual ways of committing" an element of an offense. *Id.* at 2249. The modified categorical approach has no role to

play when a state statute specifies alternative means of commission, but it may apply when a state statute lists elements in the alternative. *Id.* at 2256.

When applicable, the modified categorical approach permits a sentencing court "to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *See Descamps v. United States*, 570 U.S. 254, 262 (2013). Those documents (often called "*Shepard* documents") include the state court indictment, a transcript of the plea colloquy in state court, or a comparable state court record. *See Mathis*, 136 S. Ct. at 2249.[8] Once a sentencing court has used those *Shepard* documents to identify the elements of the particular state offense for which the defendant was convicted, it must compare those elements with the definitions of "serious drug offense" and "controlled substance offense." *See id.* at 2256. If there is a match, the defendant's conviction is a predicate for the ACCA or the career offender provision, respectively. *See id.*

b.

Here, the South Carolina statute under which Furlow was convicted provides in relevant part:

> A person who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possesses with intent to distribute, dispense, or deliver methamphetamine or cocaine base [that is, crack cocaine] . . . is guilty of a felony.

---

[8] The phrase "*Shepard* documents" refers to the Supreme Court's 2005 decision in *Shepard v. United States*, 544 U.S. 13, 16 (2005), which specified certain documents that a court can examine when applying the modified categorical approach.

*See* S.C. Code Ann. § 44-53-375(B). A first offense under section 44-53-375(B) is punishable by a maximum of fifteen years in prison. *See id.* § 44-53-375(B)(1).

Because section 44-53-375(B) of the South Carolina Code prohibits the mere "purchase[]" of methamphetamine or crack cocaine, we agree with Furlow that the statute is not a categorical match with the federal definitions of "serious drug offense" and "controlled substance offense." *See* 18 U.S.C. § 924(e)(2)(A)(ii) (defining "serious drug offense"); USSG § 4B1.2(b) (defining "controlled substance offense"). We must therefore assess and decide whether the statute is divisible, and thus amenable to the modified categorical approach. In so doing, we look to sources like the statutory text and South Carolina court decisions interpreting it. *See Mathis*, 136 S. Ct. at 2257.

Starting with section 44-53-375(B)'s text, nothing therein clearly suggests that the various specified actions are means rather than elements. As the Supreme Court explained in *Mathis*, the language of a state statute itself might answer the divisibility inquiry by "identify[ing] which things must be charged (and so are elements) and which need not be (and so are means)," or by specifying a list of "illustrative examples." *See* 136 S. Ct. at 2256 (internal quotation marks omitted). Because section 44-53-375(B)'s text does not have those indicators, we are entitled to turn to the relevant state court decisions to discern whether those courts treat the listed alternatives as elements or means. *See id.*

Our review of South Carolina precedents leads us to conclude that the state courts have treated the alternatives specified in section 44-53-375(B) as distinct offenses with

14

different elements. By way of example, in *State v. Brown*, the Court of Appeals of South Carolina explained that two of the actions specified in section 44-53-375(B) — that is, distribution of crack cocaine and possession of crack cocaine with intent to distribute — are separate "statutory crimes." *See* 461 S.E.2d 828, 831 (S.C. Ct. App. 1995); *see also State v. Gill*, 584 S.E.2d 432, 434 (S.C. Ct. App. 2003) (identifying "the elements of distribution of crack cocaine"); *State v. Watts*, 467 S.E.2d 272, 277 (S.C. Ct. App. 1996) (same). In the same vein, the state courts have treated manufacturing as a separate offense. *See Carter v. State*, 495 S.E.2d 773, 776-77 (S.C. 1998); *cf. State v. Austin*, 279 S.E.2d 374, 375 (S.C. 1981) (treating "manufacture" of marijuana as separate offense under nearly identical statute). And those courts also treat conspiracy under section 44-53-375(B) as a distinct offense. *See State v. Mouzon*, 485 S.E.2d 918, 919, 922 (S.C. 1997) (describing indictment and conviction for crime of "conspiracy to distribute crack cocaine"); *cf. Harden v. State*, 602 S.E.2d 48, 50 (S.C. 2004) (explaining that "[c]onspiracy is a separate offense from the substantive offense, which is the object of the conspiracy" in the context of section 44-53-375). Because the South Carolina courts treat the alternatives specified in section 44-53-375(B) as separate offenses with different elements, we are satisfied that the statute is divisible.

Our divisibility ruling garners support from persuasive authority.[9] For example, in an unpublished opinion in *United States v. Marshall*, we ruled divisible an almost

---

[9] In recent unpublished decisions, we have twice ruled, without detailed explanation, that section 44-53-375(B) is divisible. *See United States v. Cheeseboro*, 757 (Continued)

15

identical South Carolina drug statute, section 44-53-370(a)(1) of the South Carolina Code. *See* 747 F. App'x 139, 150 (4th Cir. 2018).[10] For our purposes, the sole distinction between section 44-53-370(a)(1) and section 44-53-375(B) is that the former applies to all controlled substances and controlled substance analogues, while the latter concerns specifically methamphetamine and crack cocaine.

In the *Marshall* decision, Judge Keenan emphasized that the South Carolina courts treat the alternatives specified in section 44-53-370(a)(1) as distinct crimes. *See id.* In particular, *Marshall* observed that the "[c]ourts in South Carolina treat the purchase of a controlled substance as a distinct crime from possession with intent to distribute." *Id.* (citing *State v. Watson*, No. 2013-UP-312, 2013 WL 8538756, at *2 (S.C. Ct. App. July 3, 2013)). The *Marshall* decision further explained that South Carolina prosecutors "charge one of the listed statutory alternatives [specified in section 44-53-370(a)(1)] in state court indictments" and that "South Carolina juries typically are instructed to find one of the alternative elements listed in the statute beyond a reasonable doubt." *Id.*

---

F. App'x 224, 227 (4th Cir. 2018); *United States v. Sulton*, 740 F. App'x 45, 46 (4th Cir. 2018).

[10] The South Carolina statute at issue in *Marshall* provides that it is unlawful for a person

> to manufacture, distribute, dispense, deliver, purchase, aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase, or possess with the intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance or a controlled substance analogue.

*See* S.C. Code Ann. § 44-53-370(a)(1).

Additionally, *Marshall* observed that the Fifth Circuit had held that section 44-53-370(a) of the South Carolina Code is divisible. *Id.* (discussing *United States v. Rodriguez-Negrete*, 772 F.3d 221, 226-27 (5th Cir. 2014)). The *Marshall* panel thus concluded that section 44-53-370(a)(1) is divisible. *Id.* And *Marshall*'s thorough analysis of section 44-53-370(a)(1) reinforces our decision that section 44-53-375(B) is divisible. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (explaining that our unpublished decisions are "entitled . . . to the weight they generate by the persuasiveness of their reasoning" (internal quotation marks omitted)).[11]

c.

Furlow resists our ruling on the divisibility question for several reasons, but none require a different result. For example, Furlow argues that a jury instruction *for a different subsection* of section 44-53-375 (that is, subsection (C)) establishes that a jury in South Carolina is charged with the entire list of alternatives specified in that subsection.[12]

___

[11] Our ruling regarding the divisibility of section 44-53-375(B) is consistent with the decisions of our sister circuits assessing the divisibility of similar state drug offense statutes. *See United States v. Mohamed*, 920 F.3d 94, 101 (1st Cir. 2019) (concluding that Maine drug statute is divisible); *United States v. Martinez-Lopez*, 864 F.3d 1034, 1041-43 (9th Cir. 2017) (same for California drug statute); *United States v. Maldonado*, 864 F.3d 893, 898 (8th Cir. 2017) (same for Iowa and Nebraska drug statutes); *Flores-Larrazola v. Lynch*, 854 F.3d 732, 732 (5th Cir. 2017) (same for Arkansas drug statute); *Spaho v. United States Attorney Gen.*, 837 F.3d 1172, 1177-78 (11th Cir. 2016) (same for Florida drug statute).

[12] As relevant here, subsection (C) of section 44-53-375 provides:

A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into
(Continued)

17

*See Mathis*, 136 S. Ct. at 2257 (explaining that sentencing court can consider state court jury instructions in assessing divisibility). Furlow fails to demonstrate, however, that the instruction is approved and used by the state courts in charging an offense under subsection (B). In any event, a review of the complete set of instructions relied on by Furlow reveals that there are separate jury charges for the offenses of possession with intent to distribute a controlled substance and distribution of a controlled substance, which also shows that subsection (B) of section 44-53-375 is divisible. *See Marshall*, 747 F. App'x at 150 (emphasizing that "South Carolina juries typically are instructed to find one of the alternative elements listed in" section 44-53-370(a)(1)).[13]

Furlow also contends that the alternatives specified in section 44-53-375(B) are means of committing a single offense because there is a uniform penalty for a violation of the statute. Insofar as section 44-53-375(B) prescribes the same penalty for each alternative action, that attribute does not outweigh the state court decisions treating those

---

> this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of methamphetamine or cocaine base . . . is guilty of a felony which is known as "trafficking in methamphetamine or cocaine base."

*See* S.C. Code Ann. § 44-53-375(C).

[13] The jury instructions referenced herein were previously contained on the South Carolina judicial branch's website. Those instructions were never approved by South Carolina's high court and were later removed from the website. *See* https://www.sccourts.org/whatsnew/displaywhatsnew.cfm?indexID=896 (last visited June 14, 2019).

18

actions as separate offenses with different elements. *See Mathis*, 136 S. Ct. at 2256 (explaining that sentencing court need not look beyond state court decision "definitively answer[ing]" question of divisibility). Moreover, as the Supreme Court explained in *Mathis*, the penalties prescribed by a state statute are most relevant to the divisibility inquiry when the statutory alternatives are punished differently. And Furlow maintains that that is not the case under section 44-53-375(B). *See id.* ("If statutory alternatives carry different punishments, then . . . they must be elements.").

Finally, Furlow argues that "[i]ndictments in South Carolina drug cases indicate that [section] 44-53-375 and similar South Carolina drug statutes are not divisible." *See* Br. of Appellant 14. According to Furlow, state court indictments charging a violation of section 44-53-375(B) or other drug statutes consistently list all of the statutory alternatives, which demonstrates that the alternatives are means and not elements. *See United States v. Jones*, 914 F.3d 893, 901 n.8 (4th Cir. 2019) (explaining that "when a charging document reiterates all the terms of the state law, that is an indication that each alternative is only a possible means of commission" (alterations and internal quotation marks omitted)). Although Furlow identifies several state court indictments that list many of the alternatives specified in various South Carolina drug statutes, other state court indictments charging violations of those statutes are more specific. *See, e.g.*, *Gill*, 584 S.E.2d at 434; *Carter*, 495 S.E.2d at 776-77.[14] We are unpersuaded that the sloppy

---

[14] Furlow's own indictment for violating section 44-53-375(B) is titled "Indictment for Distribution of Crack," and it lists all of the actions set forth in that statute, plus some that are not, such as "cultivate." *See* J.A. 74. It seems that certain text (Continued)

drafting of indictments on some occasions overrides the state courts' clear indications that the alternatives specified in section 44-53-375(B) are distinct offenses. *See Mathis*, 136 S. Ct. at 2257 (explaining that sentencing court can take "peek" at record documents, such as indictment, when "state law fails to provide clear answers" on divisibility).[15]

2.

Having determined that section 44-53-375(B) is divisible and subject to the modified categorical approach, we are entitled to also analyze the relevant *Shepard* documents in Furlow's state prosecution. *See Mathis*, 136 S. Ct. at 2249. According to the transcript of Furlow's plea hearing in the Circuit Court for Lexington County, he pleaded guilty to distribution of crack cocaine, which is punishable by a maximum of fifteen years in prison. *See id.* (explaining that sentencing court can review transcript of plea hearing). The elements of that offense are that the defendant "had actual control, or the right to exercise control over the crack cocaine," and that "he knowingly distributed or delivered the crack cocaine." *See Watts*, 467 S.E.2d at 277.

---

of the indictment is bolded, including Furlow's name ("**Bryshun Genard Furlow**") and the words "**sell**," "**distribute**," and "**cocaine base**." *Id.*

[15] Furlow also argues that our recognition that section 44-53-375(B) is divisible renders duplicitous countless state court drug offense indictments. *See United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (explaining that an indictment is duplicitous when it "join[s] in a single count . . . two or more distinct and separate offenses" (internal quotation marks omitted)). Even if correct, Furlow identifies a potential issue best raised with — and resolved by — state prosecutors and the South Carolina courts.

Comparing those elements with the definitions of "serious drug offense" and "controlled substance offense," we are satisfied that there is a match. As previously explained, a "serious drug offense" includes a state law offense that involves "distributing . . . a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law," *see* 18 U.S.C. § 924(e)(2)(A)(ii), and a "controlled substance offense" includes a state law offense "punishable by imprisonment for a term exceeding one year, that prohibits the . . . distribution . . . of a controlled substance," *see* USSG § 4B1.2(b). Because of the alignment of the state offense elements and the federal definitions, the district court did not err in ruling that Furlow's section 44-53-375(B) conviction for distribution of crack cocaine is an ACCA and career offender predicate.

B.

1.

Furlow also contends that the district court erred in ruling that his convictions for Georgia first-degree arson constitute convictions for a "violent felony" under the ACCA and a "crime of violence" under the Guidelines. In pressing that contention, he asserts that the elements of his offenses of conviction are broader than — and therefore do not match — the elements of "generic" arson (that is, arson as defined and "used in the criminal codes of most [s]tates"). *See Taylor v. United States*, 495 U.S. 575, 598 (1990). Because Furlow did not present that issue to the sentencing court, we are constrained to review it for plain error. *See United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014) ("To preserve an argument on appeal, the defendant must object on the same basis below

21

as he contends is error on appeal."); *see also United States v. Farrad*, 895 F.3d 859, 887-88 (6th Cir. 2018) (reviewing contention for plain error that ACCA enhancement was erroneously applied); *United States v. Boman*, 873 F.3d 1035, 1040 (8th Cir. 2017) (same). To succeed on plain error review, Furlow "must show (1) that the district court erred, (2) that the error was plain, and (3) that the error affected his substantial rights." *See United States v. Cohen*, 888 F.3d 667, 685 (4th Cir. 2018). Even if Furlow satisfies those three requirements, however, "we possess discretion on whether to recognize the error, but we should not do so unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

2.

a.

As heretofore explained, the ACCA "violent felony" definition and the Guidelines "crime of violence" definition enumerate "arson" as a qualifying predicate. *See* 18 U.S.C. § 924(e)(2)(B)(ii); USSG § 4B1.2(a)(2). A conviction under a state arson statute qualifies as a "violent felony" or a "crime of violence" only if the elements of the offense of conviction — as defined by the state statute — "substantially correspond[]" to (or are narrower than) the elements of generic arson. *See Taylor*, 495 U.S. at 602; *see also Mathis*, 136 S. Ct. at 2251. Here, the Georgia arson statute under which Furlow has been twice convicted provides:

> A person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage . . . [a]ny dwelling house of another without his or her consent or in which another has a security interest, including but not limited to a

22

mortgage, a lien, or a conveyance to secure debt, without the consent of both, whether it is occupied, unoccupied, or vacant.

*See* Ga. Code Ann. § 16-7-60(a)(1).

Furlow contends that, because a defendant can be convicted under section 16-7-60(a)(1) of the Code of Georgia for "knowingly caus[ing], aid[ing], abet[ting], advis[ing], encourag[ing], hir[ing], counsel[ing], or procur[ing] another to damage" the dwelling of another by fire, the statute is broader than generic arson. According to Furlow, in order to qualify as generic arson, the Georgia arson offense must require — at minimum — the mens rea of maliciousness. Furlow asserts that section 16-7-60(a)(1)'s list of actions encompasses conduct that can be completed with a mens rea that is less culpable than maliciousness.[16]

For support, Furlow relies on our decision in *United States v. Knight*, 606 F.3d 171, 172-75 (4th Cir. 2010), which assessed the meaning of "arson" as used in the Guidelines "crime of violence" definition. We therein determined that the "generic crime of arson involves the burning of real or personal property." *Id.* at 174. Although *Knight* mentioned several decisions of our sister circuits describing generic arson as the "malicious" burning of real or personal property, we did not identify the threshold mens

---

[16] Section 16-7-60(a) of the Code of Georgia contains five subsections describing conduct that constitutes first-degree arson. Based on those subsections, the district court ruled that section 16-7-60(a) is divisible. In this appeal, the parties do not contest the court's divisibility analysis. They also agree that Furlow was twice convicted under subsection (1) of section 16-7-60(a). In addition, Furlow's mens rea argument would apply to each subsection of 16-7-60(a). In making our plain error analysis, we therefore need not — and do not — decide whether the court's divisibility ruling is correct.

rea required for a generic arson. *Id.*[17]   And the *Knight* panel ruled that a Texas arson offense without an explicit maliciousness requirement satisfied the definition of generic arson. *Id.* at 174-75 (citing Tex. Penal Code Ann. § 28.02(a)(1)).

Contrary to Furlow's position, *Knight* does not establish a plain error in these proceedings.  Crucially, we were not confronted in *Knight* with a state arson statute like section 16-7-60(a)(1) of the Code of Georgia, which proscribes not only knowingly damaging the dwelling of another by fire, but also "knowingly caus[ing], aid[ing], abet[ting], advis[ing], encourag[ing], hir[ing], counsel[ing], or procur[ing] another to damage" the dwelling of another by fire.  *See* Ga. Code Ann. § 16-7-60(a)(1). Accordingly, under the second prong of the plain error analysis, *Knight* does not render "clear or obvious" any error that the district court might have committed here.  *See United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 200 (4th Cir. 2018) ("A plain error is said to be an error so clear or obvious that it jumps off the page." (internal quotation marks omitted)).

b.

Other than *Knight*, Furlow fails to identify any decision of this Court or the Supreme Court to support his mens rea position.  *See United States v. Davis*, 855 F.3d

---

[17] Our 2010 decision in *Knight* relied in part on the Eighth Circuit's 2009 ruling in *United States v. Whaley*, 552 F.3d 904 (8th Cir. 2009).  On the mens rea issue, the *Whaley* court explained that "[a]lmost all of the state criminal codes [proscribing arson] use one or a combination of the following mental states: intentionally, willfully, maliciously, wantonly, and knowingly." *Id.* at 907 (internal quotation marks omitted). The Eighth Circuit "perceive[d] little difference among th[ose] terms in the context of an offense that forbids destroying property by fire." *Id.*

587, 595-96 (4th Cir. 2017) (explaining that error is plain if, "at the time of appellate consideration, the settled law of the Supreme Court or this Court establishes that an error has occurred"). In fact, we have concluded, albeit in unpublished decisions, that convictions pursuant to state statutes that prohibit aiding, counseling, or procuring the burning of property are generic arson convictions. *See United States v. Craig*, 236 F. App'x 863, 865 (4th Cir. 2007) (ruling that conviction under Virginia arson statute, Va. Code Ann. § 18.2-81, was generic arson conviction); *United States v. Neilson*, 141 F.3d 1161, 1998 WL 184030, at *1 (4th Cir. Apr. 20, 1998) (table) (concluding that conviction for third-degree arson in West Virginia was conviction for generic arson).

In addition, at least two other courts of appeals have rejected an argument nearly identical to that pursued by Furlow in this appeal. *See United States v. Perez-Tapia*, 241 F. App'x 416, 418 (9th Cir. 2007); *United States v. Hathaway*, 949 F.2d 609, 610-11 (2d Cir. 1991); *see also United States v. Carthorne*, 726 F.3d 503, 516-17 (4th Cir. 2013) ("When we have yet to speak directly on a legal issue . . . a district court does not commit plain error by following the reasoning of another circuit." (internal quotation marks omitted)). Against that backdrop, we are satisfied that Furlow has not established plain error in the district court's ruling that the Georgia first-degree arson convictions constitute a predicate for the ACCA and the career offender provision.

IV.

Pursuant to the foregoing, we reject Furlow's challenges to his sentence and affirm the criminal judgment.

*AFFIRMED*