**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4179

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

JARVIS MIKEL JACKSON,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Anderson.  Henry M. Herlong, Jr., Senior District Judge.  (8:21−cr−00495−HMH−1)

Submitted:  October 5, 2022                          Decided:  April 10, 2023

Before AGEE, DIAZ, and HEYTENS, Circuit Judges.

Vacated and remanded by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Agee and Judge Heytens joined.

**ON BRIEF:** Kimberly H. Albro, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Corey F. Ellis, United States Attorney, Columbia, South Carolina, Winston Irwin Marosek, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Jarvis Mikel Jackson appeals the 115-month prison sentence imposed by the district court after he pleaded guilty to a firearm-related offense. Jackson argues his base offense level was wrongly enhanced because his prior South Carolina drug convictions could have been committed through inchoate conduct and so aren't "controlled substance offenses" within the meaning of the Sentencing Guidelines. We agree, so we vacate and remand.

I.

After a gun fell from his pocket while he was attempting to evade arrest, Jackson was charged with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty in November 2021.

A probation officer calculated Jackson's base offense level using § 2K2.1(a) of the Sentencing Guidelines, which governs the unlawful possession of firearms and ammunition. Jackson's firearm, a Ruger SR9C 9mm semiautomatic handgun, had a "large capacity magazine" because it carried more than 15 rounds. U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2K2.1 cmt. n.2 (U.S. Sent'g Comm'n 2021); J.A. 138. And the probation officer determined that Jackson had two prior felony convictions for controlled substance offenses. The large capacity magazine and prior convictions gave Jackson a base

2

offense level of 26 under § 2K2.1(a)(1) and an advisory guideline range of 110 to 120 months in prison.[1]

Jackson objected to the probation officer's calculations, arguing his prior convictions for distribution of crack cocaine under S.C. Code Ann. § 44-53-375(B) weren't controlled substance offenses after our decision in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022).  Without those controlled substance offenses, Jackson's base offense level would have been 20 based on the large capacity magazine only.  *See* U.S.S.G. § 2K2.1(a)(4).  That would have resulted in an advisory guideline range of 63 to 78 months.[2]

The government disagreed, arguing Jackson's prior convictions were controlled substance offenses under an earlier case, *United States v. Furlow*, 928 F.3d 311 (4th Cir. 2019), *vacated on other grounds*, 140 S. Ct. 2824 (2020), and asserting that *Campbell* was inapplicable.

The district court agreed with the government and sentenced Jackson to 115 months' imprisonment, followed by three years of supervised release.

---

[1] Jackson received a two-level increase under U.S.S.G. § 3C1.2 for attempting to escape and resisting arrest while armed with a loaded handgun and a three-level reduction under § 3E1.1 for acceptance of responsibility.  His final offense level was 25 and his criminal history category was VI.  His guideline range of 110 to 137 months was capped because his offense carried a statutory maximum of 120 months' imprisonment.  J.A. 149.

[2] After applying the same two-level increase and three-level reduction, for a final offense level of 19.

3

The sentencing hearing was brief, and the district court didn't discuss the factors in 18 U.S.C. § 3553(a) or otherwise explain the basis for Jackson's sentence in any detail. After announcing Jackson's sentence, the district court said that it believed it had correctly calculated the guideline range and found Jackson's case was "a typical case contemplated by the [G]uidelines." J.A. 120–21. But, the court continued, if its calculations were later found to be incorrect, it was announcing "for the record that [it] would have imposed this same sentence as an alternate variant sentence in light of [the] 18 U.S.C., Section 3553 factors and in light of the totality of the circumstances." J.A. 121. The court provided no further explanation for why an alternate variant sentence would be appropriate.

This appeal followed.

## II.

We review de novo whether a prior conviction qualifies as a controlled substance offense under the Sentencing Guidelines. *United States v. Dozier*, 848 F.3d 180, 182–83 (4th Cir. 2017).

We review the procedural reasonableness of a sentence for abuse of discretion. *United States v. Gomez-Jimenez*, 750 F.3d 370, 379 (4th Cir. 2014). And we apply harmless-error review in determining whether any procedural error warrants reversal. *See United States v. Boulware*, 604 F.3d 832, 838 (4th Cir. 2010).

### A.

We begin with Jackson's argument that his prior South Carolina convictions for distribution of crack cocaine aren't controlled substance offenses.

4

1.

Jackson's base offense level was 26 because his crime involved a "semiautomatic firearm that is capable of accepting a large capacity magazine" and because he had previously "sustain[ed] at least two felony convictions of . . . a controlled substance offense." *See* U.S.S.G. § 2K2.1(a)(1); J.A. 145 ¶ 44. The application notes for § 2K2.1 state that "controlled substance offense" has the meaning set out in the career offender provisions of the Guidelines:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b); *see also id.* § 2K2.1 cmt. n.1 (citing *id.*).

In determining whether an offense falls within § 4B1.2's definition, we apply the categorical approach. *United States v. Ward*, 972 F.3d 364, 368 (4th Cir. 2020). We don't consider the defendant's actual offense conduct. *Dozier*, 848 F.3d at 183. Instead, we compare the full range of conduct criminalized by the predicate statute to § 4B1.2's definition of "controlled substance offense." *Id.* If the statute of conviction is broader than the Guidelines' definition, then the conviction doesn't qualify. *See, e.g.*, *United States v. Norman*, 935 F.3d 232, 237–38 (4th Cir. 2019).

Both predicate convictions identified in Jackson's case were under S.C. Code Ann. § 44-53-375(B), which covers any person who "manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possesses with intent to distribute, dispense,

5

or deliver methamphetamine or cocaine base." We've held that § 44-53-375(B) is "divisible," *e.g.*, *Furlow*, 928 F.3d at 320, so we apply the "modified categorical approach," and determine whether the specific elements under which Jackson was convicted categorically constitute a controlled substance offense, *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019).

2.

The parties agree Jackson was convicted of "distribution" of crack cocaine. Under South Carolina law, "distribute means to deliver (other than by administering or dispensing) a controlled substance." S.C. Code Ann. § 44-53-110 (17) (cleaned up). And "deliver or delivery means the actual, constructive, or attempted transfer" of a controlled substance. *Id.* § 44-53-110(10) (cleaned up).

Jackson argues these definitions show that "distribution" of crack cocaine in South Carolina can be committed through inchoate conduct—namely, "attempted transfer." And he argues that after our decision in *Campbell*, his South Carolina convictions can't be considered "controlled substance offenses." We agree.

We held in *Campbell* that § 4B1.2's definition of "controlled substance offense" doesn't include "an attempt to deliver a controlled substance." 22 F.4th at 442, 445–47; *see also United States v. Ryles*, No. 20-4513, 2022 WL 2167615 (4th Cir. June 16, 2022) (applying *Campbell* in a case involving § 2K2.1).

We then applied that reading of § 4B1.2 to Campbell's conviction under a West Virginia statute making it unlawful to "manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." W. Va. Code § 60A-4-401(a). We focused

6

on the word "deliver," holding that because a separate provision of West Virginia law defines delivery as "the actual, constructive *or attempted* transfer" of a controlled substance, "the least culpable conduct criminalized by the West Virginia statute is an attempt to deliver a controlled substance." *Campbell*, 22 F.4th at 441–42. We held that Campbell's statute of conviction swept in conduct not covered by the definition in § 4B1.2 and was therefore not a controlled substance offense.

The South Carolina statute here references the same definition of "delivery" that we held broadened the statute in *Campbell* beyond the generic definition of a "controlled substance offense." Thus, Jackson's prior convictions for distribution of crack cocaine under S.C. Code Ann. § 44-53-375(B) are likewise not qualifying offenses for the purposes of § 2K2.1(a).[3]

3.

The government argues that we're bound by prior cases finding S.C. Code Ann. § 44-53-375(B) to be a controlled substance offense. *See, e.g.*, *Furlow*, 928 F.3d at 322. Not so.

---

[3] We've applied *Campbell* to another state's similar statute, in *United States v. Locklear*, No. 19-4443, 2022 WL 2764421, at *2 (4th Cir. July 15, 2022) (unpublished). The North Carolina statute at issue in *Locklear* also defined "delivery" to include "attempted transfer." N.C. Gen. Stat. § 90-87(7) ("'Deliver' or 'delivery' means the actual[,] constructive, or attempted transfer from one person to another of a controlled substance."). We determined that we were bound by *Campbell*'s reasoning and found it "readily applicable to Locklear's offense," concluding the district court plainly erred. *Locklear*, 2022 WL 2764421, at *2–3. While unpublished, *Locklear* adds persuasive weight to Jackson's arguments.

*Furlow* focused on whether South Carolina's statute was divisible.[4]  *See* 928 F.3d at 319–22.  Once we concluded it was, we did a cursory comparison of the elements of Furlow's distribution conviction and the Guidelines' definition of "controlled substance offense" and concluded there was a categorical match.  *Id.* at 322.  But the issue before us today—whether "attempted transfer" falls outside the definition in § 4B1.2—wasn't addressed in that decision, and we may reach it now.  *Cf. United States v. McLeod*, 808 F.3d 972, 977 (4th Cir. 2015) (our observation in a prior case that defendant's statute of conviction "tracks the [Armed Career Criminal Act's] generic definition of burglary" wasn't binding in future case involving an issue "not briefed [or] argued" in the earlier one).[5]

Even if *Furlow* were directly on point, it was decided against a background where we assumed controlled substance offenses included "the offenses of aiding and abetting, conspiring, and *attempting* to commit such offenses."   U.S.S.G. § 4B1.2, cmt. n.1 (emphasis added).  But *Campbell* held that assumption was "clearly undermined" by the Supreme Court's decision in *Kisor v. Wilkie*, opening the door for arguments like Jackson's.  22 F.4th at 447 (citing 139 S. Ct. 2400 (2019)) (cleaned up).

---

[4] The Supreme Court vacated our decision in *Furlow* on other grounds.  *Furlow v. United States*, 140 S. Ct. 2824 (2020).  We don't address the effect of that vacatur here because Jackson doesn't dispute that S.C. Code Ann. § 44-53-375(B) is divisible, and because as we later discuss, we aren't bound by the other aspects of *Furlow* in any event.

[5] The government cites *United States v. Buckman*, *see* Appellee's Br. at 8 (citing 810 F. App'x 184, 187 (4th Cir. 2020)), but it's no more persuasive.  *Buckman* is unpublished and doesn't bind us.  It also involved a cursory application of *Furlow*, which was decided while Buckman's appeal (and the government's cross-appeal) was pending, and likewise didn't address the issue in this case.  *See Buckman*, 810 F. App'x at 187.

The government next asks us to read "attempted transfer" differently in South Carolina than we did in West Virginia's identically worded statute. But we're not persuaded by the government's attempts to distinguish the statute in *Campbell*.

First, the government argues that "attempted transfer" in S.C. Code Ann. § 44-53-375(B) means a "completed" rather than "attempted delivery." Appellee's Br. at 17. But that conflicts with a decision from the South Carolina Court of Appeals, holding that "no completed sale is required to constitute a distribution [under § 44-53-375(B)]. Rather, the *attempted delivery* is a distribution." *State v. Brown*, 461 S.E.2d 828, 831 (S.C. Ct. App. 1995) (emphasis added). And in applying the categorical approach, we're "bound by the interpretation of the offense articulated by that state's courts." *United States v. Middleton*, 883 F.3d 485, 487 (4th Cir. 2018) (cleaned up).

Second, the government asserts that when South Carolina used "attempted" in § 44-53-375(B), it employed its "ordinary meaning," rather than its "legal term-of-art meaning." *See* Appellee's Br. at 10. The necessary implication of the government's argument is that when West Virginia used "attempted" in its same definition of "delivery," it did the opposite. But the government offers no compelling basis, textual or otherwise, to support this contention. And we won't find as much based only on the government's ipse dixit.

Third, the government argues that Jackson's reading of South Carolina's statute leads to superfluity. It notes the statute makes it unlawful to "distribute[], dispense[], deliver[] . . . or otherwise . . . *attempt[]* . . . to . . . distribute, dispense, deliver . . . methamphetamine or cocaine base." S.C. Code Ann. § 44-53-375(B) (emphasis added).

9

And it says this shows South Carolina "criminalize[s] completed distributions separately from attempted distributions." Appellee's Br. at 12. According to the government, by adopting a reading that "distribute" includes attempts, we would render South Carolina's separate codification of attempts "meaningless." *Id.* at 13.

But the statute isn't superfluous. As Jackson points out, the South Carolina legislature may have rationally intended to criminalize certain inchoate conduct through the definition of delivery, and then included a catchall for "other ways or circumstances that drug crimes can be attempts." Reply Br. at 6. Cases cited in the government's brief illustrate how this might play out. *See* Appellee's Br. at 11 n.2. In *United States v. Pino*, for example, we found sufficient evidence to convict the defendant of *distribution* on an attempted transfer theory after he engaged in a fruitless search for heroin that he intended to deliver. 608 F.2d 1001, 1003 (4th Cir. 1979). But in *United States v. Fletcher*, the defendants were convicted of *attempted* distribution for successfully delivering a substance they believed to be PCP but was in fact not a controlled substance. 945 F.2d 725, 727 (4th Cir. 1991).

And even if reading "distribution" to include certain inchoate conduct creates some redundancy in § 44-53-375(B), that wouldn't "be a sufficient reason to ignore [the statute's] plain text." *United States v. Jones*, 60 F.4th 230, 238 (4th Cir. 2023). South Carolina's statute permits a conviction for distribution of crack cocaine where the defendant has committed only an "attempted transfer." S.C. Code Ann. § 44-53-110(10), (17). After *Campbell*, that's not a controlled substance offense under the Guidelines.

10

At bottom, *Campbell* held that because the defendant's conviction could have been based on "*attempted* transfer," it was an "attempt offense" and so wasn't a categorical match for the definition of "controlled substance offense" in the Guidelines. 22 F.4th at 442, 444 (emphasis added). The same is true of Jackson's conviction for distribution of crack cocaine.[6]

## B.

We turn next to the government's alternative argument: that the district court's decision to count Jackson's prior convictions for distribution of crack cocaine as controlled substance offenses is harmless. It isn't.

"[I]mproper calculation of a guideline range constitutes significant procedural error, making the sentence procedurally unreasonable and subject to being vacated." *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012). But a Guidelines error is harmless if the record shows that "(1) the district court would have reached the same result even if it had decided the [G]uidelines issue the other way, and (2) the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor." *Gomez-Jimenez*, 750 F.3d at 382 (cleaned up). "When reviewing substantive

---

[6] Much of the government's brief discusses the similarities between the definitions of distribution in the South Carolina statute and the federal Controlled Substances Act. *See* Appellee's Br. at 9–18 (raising concerns that a decision favorable to Jackson would affect federal distribution convictions). But we're bound by our decision in *Campbell*, and the government's policy arguments are better addressed to the Sentencing Commission. *See Norman*, 935 F.3d at 239 n.2 (holding that conviction for conspiracy, in violation of 21 U.S.C. § 846, was not a controlled substance offense because it didn't require an overt act, and explaining that "[i]f the Commission wishes for § 2K2.1 to reach all federal conspiracy offenses, . . . it can amend the Guidelines accordingly"). So we won't address those arguments here.

11

reasonableness, we may consider the extent of the deviation from the guideline range, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Hargrove*, 701 F.3d at 163–64 (cleaned up).

The district court said that it "would have imposed this same sentence as an alternate variant sentence in light of [the] 18 U.S.C., Section 3553 factors and in light of the totality of the circumstances." J.A. 121. That statement satisfies the first prong of harmless error.

But the court didn't explain which § 3553(a) factors would justify a sentence more than three years above the top of the correct guideline range. In fact, it described Jackson's case as "a *typical* case contemplated by the [G]uidelines." *Id.* (emphasis added). We aren't convinced that, in determining that an alternate variant sentence would be appropriate, "the district court conducted a thorough individualized assessment of [Jackson] and his offense conduct in light of [the sentencing] factors." *Hargrove*, 701 F.3d at 164. So the error here wasn't harmless.

## III.

It's no secret that the career offender provisions have been the subject of prolific litigation in recent years. Many of those cases are complex, but this one is simple. In *Campbell*, we determined that the inclusion of "attempted transfer" in the definition of "deliver" meant a West Virginia statute encompassed inchoate conduct and wasn't a controlled substance offense under the Guidelines. The use of the same phrase in S.C. Code Ann. § 44-53-375(B) leads to the same conclusion.

12

And while the district court said it would have imposed the same sentence if Jackson's guideline range was lower, it didn't provide any individualized analysis that would justify an effective 37-month upward variance. We therefore vacate the judgment and remand for resentencing. We dispense with oral argument because the facts and contentions are adequately presented in the materials before this court and oral argument would not aid us in our decision.

*VACATED AND REMANDED*