**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 18-4385**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DONALD SHEMAN BUSH,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Terry L. Wooten, District Judge. (3:17-cr-00030-TLW-12)

Argued: October 31, 2019                           Decided: November 27, 2019

Before WILKINSON, KING, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Wilkinson and Judge Harris joined.

**ARGUED:** Zachary Thomas Dawson, FOX ROTHSCHILD LLP, Greensboro, North Carolina, for Appellant. Benjamin Neale Garner, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** C. Fredric Marcinak, FOX ROTHSCHILD LLP, Greenville, South Carolina, for Appellant. Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

KING, Circuit Judge:

Defendant Donald Sheman Bush appeals from his convictions and sentence for drug conspiracy and related offenses in the District of South Carolina. Bush's trial was conducted in October of 2017, and the jury convicted him of conspiring to possess and distribute cocaine and cocaine base, plus two charges of using a communication facility to aid in the commission of drug felonies. On appeal, Bush presents two challenges to his convictions. First, Bush contests the propriety of the district court's admission into evidence of a state court record concerning his 2013 state conviction for distribution of cocaine base. Second, he maintains that the prosecution fatally erred in failing to correct the false testimony of one of its witnesses. As explained below, we reject both contentions and affirm.

I.

On January 18, 2017, the federal grand jury in Columbia, South Carolina, returned a twenty-nine-count indictment against sixteen defendants for various controlled substance crimes and related offenses.[1] The indictment resulted primarily from an FBI investigation into drug distribution activities involving cocaine and cocaine base (commonly known as

---

[1] Because this appeal arises from a jury trial, we accept the facts in the light most favorable to the government, as the prevailing party. We recite the relevant facts accordingly. *See United States v. Louthian*, 756 F.3d 295, 297 n.1 (4th Cir. 2014).

2

"crack cocaine") in and around Sumter, South Carolina.[2] The conspiracy charge in Count 1 alleged that Bush and others, from 2008 to early 2017, conspired to possess and distribute cocaine and cocaine base in South Carolina, in violation of 21 U.S.C. § 846. That charge specified that five kilograms or more of cocaine and 280 grams or more of cocaine base were attributable to Bush. Two other charges against Bush — in Counts 21 and 22 — alleged that he used a communication facility, that is, a telephone, to aid in the commission of drug felonies, in violation of 21 U.S.C. § 843(b). Unlike his codefendants, Bush exercised his right to a jury trial.

Prior to trial, the district court addressed with counsel the contested admissibility of a specific piece of the government's evidence — an official record of the Court of General Sessions of Sumter County, South Carolina — revealing that Bush had pleaded guilty there, in May 2013, to the offense of distributing cocaine base (the "State Conviction Record").[3] The lawyers disagreed on whether the State Conviction Record was "extrinsic" evidence of another criminal act by Bush, the admissibility of which would be governed by Rule

---

[2] At trial, a former DEA agent explained to the jury that the terms "crack cocaine" and "crack" are commonly used to refer to cocaine base. Several witnesses used the words "crack" and "crack cocaine" when discussing the drug transactions underlying this case. Because the indictment and applicable regulatory provisions use the equivalent term "cocaine base," we also utilize that term.

[3] The State Conviction Record shows that Bush pleaded guilty in the Sumter County state court on May 29, 2013. Bush was apparently incarcerated by the South Carolina authorities from late 2011 until his 2013 guilty plea for conduct underlying those proceedings.

404(b) of the Federal Rules of Evidence.[4] The prosecutors argued that Rule 404(b) did not apply to the evidence issue because the State Conviction Record constituted "intrinsic" evidence of the drug conspiracy and provided additional evidence of Bush's involvement in drug transactions during the period of the Count 1 conspiracy. Bush disagreed, arguing that Rule 404(b) precluded the admission of the State Conviction Record because it was extrinsic to the drug conspiracy and was otherwise inadmissible evidence.

In its pretrial proceedings, the district court identified the applicable precedent concerning Rule 404(b) issues and recognized the distinctions between evidence that is intrinsic (not subject to Rule 404(b)) and evidence that is extrinsic (subject to Rule 404(b)). The court also questioned the lawyers about the interplay between Rule 404(b), the applicable precedent, and the pertinent facts. The court declined, however, to render a pretrial ruling on the admissibility of the State Conviction Record, deferring that decision pending trial proceedings.[5] Shortly thereafter, the trial commenced.

---

[4] Rule 404(b)(1) prohibits the admission of evidence of a crime, wrong, or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But that provision applies only to evidence that is "extrinsic" to the charged offense. It does not apply to evidence that is "intrinsic" to the charged offense. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988); *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994).

[5] The court's pretrial hearing concerning the State Conviction Record spans multiple pages of the Joint Appendix. *See* J.A. 35-88. The following recitation from the bench reflects the court's view as the pretrial hearing concluded:

> But I have looked at this. . . . And [the Fourth Circuit's decision in *United States v. Chin*] says if it's conspiracy conduct, you don't have to worry about 404(b). Obviously, its intrinsic. It's all part of the conspiracy. If it's the conspiracy conduct, the jury has it. That's just the way it works. That's the

(Continued)

During Bush's three-day trial in Columbia in October of 2017, eight of Bush's coconspirators testified against him.[6] Their evidence portrayed Bush as an integral member of a cocaine and cocaine base distribution ring that operated in the streets and "trap houses" of Sumter.[7] The coconspirators admitted that they had routinely engaged in cocaine and cocaine base transactions with Bush from about 2008 until about 2017, with the exception of a period of about eighteen months between late 2011 and 2013, when Bush was in prison. Several of the witnesses had purchased cocaine base from Bush's trap houses in Sumter, and others had sold cocaine to Bush. Bush would use the cocaine he purchased to make cocaine base. In short, Bush's coconspirators confirmed that, except when he was incarcerated, Bush engaged in near-daily cocaine and cocaine base transactions in Sumter during the alleged drug conspiracy.

---

way any charge works. But if it's something outside the conspiracy, if it's extrinsic, prior convictions that predate the conspiracy, then it's a much more careful analysis and a much more comprehensive analysis with many, many steps. So, I'm not going to go through a lot of detail. I'm just going to make the record clear here as to what I've looked at. And then we'll see how the evidence unfolds. And I'll make decisions about what's admissible and what's not.

See J.A. 80-81. (Citations herein to "J.A.__" refer to the contents of the Joint Appendix filed by the parties in this appeal).

[6] The various coconspirators who testified for the prosecution had pleaded guilty to federal offenses and agreed to cooperate with the authorities.

[7] On this record, a "trap house" is a location where drug dealers regularly sell cocaine and cocaine base. Trap houses were described, inter alia, as where "crackheads would come, and they would buy crack." See S.J.A. I at 99. (Citations herein to "S.J.A. I __" refer to the contents of the first Supplemental Joint Appendix filed by the parties in this appeal).

5

At the end of the trial's first day, the prosecution sought a ruling from the trial court on the admissibility issue relating to the State Conviction Record. Relying primarily on our 1996 decision in *United States v. Chin*, 83 F.3d 83 (4th Cir. 1996) — and after further consideration of the applicable legal principles — the court determined that the State Conviction Record was properly characterized as intrinsic evidence of the drug conspiracy. The court emphasized that the trial evidence already demonstrated that the conduct underlying the State Conviction Record "was in the conspiracy framework." *See* J.A. 121-22. In explaining this conclusion, the court related that Bush pleaded "guilty [as reflected in the State Conviction Record] to distributing crack during the conspiracy period, and [that] there[] [was] testimony that he was distributing crack during [that] timeframe." *Id.* at 117. The court thus decided that the State Conviction Record was not being used as extrinsic evidence of another crime and could be admitted into evidence without regard to the provisions of Rule 404(b), which are applicable to extrinsic evidence only.[8]

After the court ruled that the State Conviction Record was admissible, the prosecutors presented additional evidence from coconspirators who had engaged in drug

---

[8] In concluding that the State Conviction Record was admissible as intrinsic evidence of the conspiracy, the court further explained that:

> The *Chin* case makes it clear that certain conduct is intrinsic. The Government doesn't assert that this is 404(b). They assert that this is intrinsic to the conspiracy charge. And I conclude that their position is the proper position and that the ruling should be that the [State Conviction Record] . . . is part of the conspiracy that is charged and part of the conspiracy that has been proven based on the witnesses, that it is intrinsic to the conspiracy charge and, therefore, admissible pursuant to the *Chin* analysis.

*See* S.J.A. I at 306.

transactions with Bush, and also called FBI Agent Kevin Conroy. Conroy explained that the FBI had identified a drug dealer named Foster and subsequently conducted several drug buys and wiretaps to locate other drug dealers and their coconspirators in and around Sumter. In conducting its investigation, the FBI secured evidence of Bush's involvement in the drug conspiracy. The prosecution introduced the State Conviction Record during Conroy's testimony, and he identified the offense to which Bush had pleaded guilty in Sumter County in May 2013, that is, distribution of cocaine base. Bush did not present any evidence, and the case was thereafter argued and submitted to the jury.

On October 18, 2017, the jury convicted Bush on the three charges being tried — the Count 1 conspiracy, plus the substantive offenses in Counts 21 and 22. On the conspiracy offense, the jury found that five kilograms or more of cocaine and at least twenty-eight grams, but less than 280 grams, of cocaine base were attributable to Bush. As a result of the jury's findings and Bush's extensive criminal record, Bush faced a mandatory minimum sentence of life imprisonment, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846. On May 31, 2018, the district court sentenced Bush to life in prison on Count 1, plus concurrent sentences of five years on Counts 21 and 22.[9] Bush has noted this appeal from the criminal judgment, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[9] Bush received a mandatory life sentence because, inter alia, he had been previously convicted of at least two felony offenses involving cocaine base. *See* 21 U.S.C. § 841(b)(1)(A). On appeal, Bush does not challenge any aspect of his sentence.

II.

A.

1.

In this appeal, Bush's primary challenge relates to the trial court's admission of the State Conviction Record. Although we generally review such an evidentiary ruling for abuse of discretion, Bush contests the applicability of that standard of review to this issue. More specifically, Bush maintains, relying primarily on a decision of the Third Circuit, that we are obliged to review de novo the trial court's ruling that the State Conviction Record was intrinsic to the drug conspiracy.[10] The government contends, in response, that we must review that ruling for abuse of discretion.

Bush's position on the standard of review draws some support from two of our sister circuits, which have concluded that a ruling that evidence is intrinsic to a charged offense is an issue that is reviewed de novo on appeal. *See United States v. Loftis*, 843 F.3d 1173, 1176 n.1 (9th Cir. 2016); *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). Our precedent, however, is to the contrary, and has consistently been that evidentiary rulings are assessed on appeal for abuse of discretion. *See, e.g.*, *United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013) (reviewing for abuse of discretion a trial court's ruling that

---

[10] During oral argument, Bush's lawyer waffled somewhat on his contention regarding the standard of review. But counsel did not concede this issue, and his appellate brief explicitly asserts a de novo standard of review. In these circumstances, we will "address the issue as raised in the brief." *See Baker v. Corcoran*, 220 F.3d 276, 295 n.16 (4th Cir. 2000).

evidence is intrinsic to charged offense); *United States v. Stitt*, 250 F.3d 878, 888 (4th Cir. 2001) (same).[11] In any event, the panels of this Court are generally bound by our precedent, and this panel is not entitled to reject or alter an earlier panel's ruling, in the absence of a controlling en banc ruling or Supreme Court decision. *See McMellon v. United States*, 387 F.3d 329, 332-33 (4th Cir. 2004) (en banc). Accordingly, we will review for abuse of discretion the trial court's ruling in this case that the State Conviction Record was intrinsic evidence of the alleged drug conspiracy. In so doing, we will identify an abuse of discretion if the court's "decision [was] guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *See United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (internal quotation marks omitted).

2.

Bush contends that the trial court erred when it ruled that the State Conviction Record was admissible, without regard to Rule 404(b), because the Record was intrinsic to the drug conspiracy offense. He argues that the Record relates to a crime that was extrinsic to the conspiracy, and that Rule 404(b) applied in this situation and precluded the court from admitting the State Conviction Record into evidence.

---

[11] From our research, nearly all of the other courts of appeals apply the abuse of discretion standard to a trial court's decision regarding whether evidence is intrinsic or extrinsic to a charged crime. *See, e.g.*, *United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996); *United States v. Conner*, 583 F.3d 1011, 1018 (7th Cir. 2009); *United States v. Ruiz-Chavez*, 612 F.3d 983, 986, 988 (8th Cir. 2010); *United States v. Irving*, 665 F.3d 1184, 1210-11 (10th Cir. 2011); *United States v. Ford*, 784 F.3d 1386, 1392, 1394 (11th Cir. 2015); *United States v. Bell*, 795 F.3d 88, 98-99 (D.C. Cir. 2015).

As a general proposition, the admissibility of extrinsic evidence of other crimes, wrongs, or acts is governed by Rule 404(b).[12]  And Rule 404(b)(1) precludes the admission of such evidence to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Evidence of another crime would be admissible, however, for the limited purposes specified in Rule 404(b)(2).  But the provisions of Rule 404(b) are only applicable when the challenged evidence is extrinsic, that is, "separate" from or "unrelated" to the charged offense.  *See United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Federal Rule of Evidence 404(b) . . . generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character . . . .").  Accordingly, we have consistently held that "acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence."  *See United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996); *see also United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012).

---

[12] Pursuant to Rule 404(b), extrinsic evidence of other crimes, wrongs, or acts is subject to, inter alia, the following provisions:

(1) *Prohibited Uses*.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses; Notice in a Criminal Case*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*See* Fed. R. Evid. 404(b)(1)-(2).

We have heretofore provided guidance that illuminates the meaning of the term "intrinsic" in the Rule 404(b) context. As our distinguished fallen colleague Judge Murnaghan explained in 1996 in the *Chin* decision, other criminal acts are "intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *See* 83 F.3d at 88 (internal quotation marks omitted). And such evidence "is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *See United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (internal quotation marks omitted); *see also McBride*, 676 F.3d at 396 ("Evidence of uncharged conduct arising out of the same series of transactions as the charged offense . . . do[es] not qualify as evidence of 'other crimes' subject to scrutiny under Rule 404(b)."). We have also recognized that evidence is intrinsic when it "serve[s] to complete the story of the crime on trial." *See Kennedy*, 32 F.3d at 886 (internal quotation marks omitted); *see also McBride*, 676 F.3d at 396. Especially pertinent here, evidence of other inculpatory acts is intrinsic if "both acts are part of a single criminal episode." *See Otuya*, 720 F.3d at 188.

### 3.

In these circumstances, we are satisfied that the trial court did not abuse its discretion in ruling as it did with respect to the State Conviction Record. The conspiracy charge specified that Bush conspired to possess and distribute cocaine and cocaine base from 2008 to January 2017. And the trial evidence was that Bush, during the conspiracy, consistently purchased cocaine, and that he produced and sold cocaine base in the streets

11

and trap houses of Sumter. The State Conviction Record, which involved Bush's distribution of cocaine base in Sumter in 2011, was thus inextricably intertwined with the conspiracy.

Bush resists that determination, contending that his incarceration on the state conviction — from late 2011 to 2013 — ended his involvement in the alleged conspiracy. As we have recognized, however, a "defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action." *See United States v. West*, 877 F.2d 281, 289 (4th Cir. 1989). A "[w]ithdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy." *Id.* On this record, there is simply no evidence that Bush ever intended to withdraw from the conspiracy. And Bush's 2011 arrest and his 2013 state court conviction fail to establish that the alleged conspiracy had ended. *See United States v. Grubb*, 527 F.2d 1107, 1109 (4th Cir. 1975) ("Arrest of some co-conspirators does not, as a matter of law, terminate a conspiracy."); *see also United States v. Urrego-Linares*, 879 F.2d 1234, 1240 (4th Cir. 1989) (explaining that arrest of defendant and a single coconspirator "did not necessarily mean that the conspiracy was terminated").

Bush also contends that the government was required to establish — for the State Conviction Record to be intrinsic — that the conduct underlying the Record involved the same individuals and drugs as the charged conspiracy. To the contrary, it is sufficient that the State Conviction Record proved the distribution of the same controlled substance (cocaine base), in the same city (Sumter), during the same period of time. *See United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) ("Evidence of uncharged conduct is not 'other

12

crimes' evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense . . . ." (further internal quotation marks omitted)).

In this situation, the trial court carefully studied and resolved the admissibility issue. It conducted a pretrial hearing where it extensively questioned the lawyers, identified the controlling legal principles, and deferred a final ruling on the issue until trial. The court then considered the trial presentation and rendered its decision on the basis of precedent and the available evidence. In such circumstances, the court did not abuse its discretion in deciding that the State Conviction Record was intrinsic to the drug conspiracy and not subject to a Rule 404(b) inquiry. *See Bryant v. Charles L. Stockhausen Co.*, 271 F. 921, 924 (4th Cir. 1921) ("The court below was merely exercising a proper discretion in such matters, and this court will not disturb the exercise of that discretion, because it seems to have been wisely and properly exercised in this case."). We are therefore satisfied that the court's handling of this evidentiary issue was a prudent exercise of its discretion.

## B.

### 1.

Bush also contends that his due process rights were violated because the government failed to correct the false testimony of one of its witnesses. Because that contention is an afterthought that was not preserved in the trial proceedings, we review it for plain error only. *See United States v. Brewer*, 1 F.3d 1430, 1434 (4th Cir. 1993) ("Where counsel fails adequately to present and preserve an objection on the record, we review the admission of evidence solely for plain error."). To establish plain error, Bush "must show (1) that the district court erred, (2) that the error was plain, and (3) that the error affected his substantial

13

rights." *See United States v. Furlow*, 928 F.3d 311, 323 (4th Cir. 2019) (internal quotation marks omitted); *see also United States v. Olano*, 507 U.S. 725, 732 (1993). Even if Bush could show that a plain error affected his substantial rights, "we possess discretion on whether to recognize the error . . . [and] should not do so unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *See Furlow*, 928 F.3d at 323 (internal quotation marks omitted).

2.

Bush maintains on appeal that George McDowell — one of the coconspirators who testified against him — presented false testimony regarding the timeframe of McDowell's drug transactions with Bush. According to Bush, the prosecution's use of McDowell's testimony violated his due process rights.

The Supreme Court has "established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). And the "same result obtains when the [prosecutors], although not soliciting false evidence, allow[] it to go uncorrected when it appears." *Id.* In other words, a "conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *See United States v. Chavez*, 894 F.3d 593, 601 (4th Cir. 2018) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). A claim of trial error predicated on these principles is generally characterized as a *Napue* claim. We have recognized, however, that

14

a meritorious *Napue* claim requires "a showing of the falsity and materiality of testimony." *See Daniels v. Lee*, 316 F.3d 477, 493 (4th Cir. 2003) (internal quotation marks omitted).

Bush's *Napue* claim is doomed because he cannot show that McDowell presented false testimony. Bush's position is that McDowell gave perjured testimony when he testified on direct examination that he first engaged in drug transactions with Bush in 2013, but then asserted on cross-examination that those transactions began in 2011. On further examination, however, Bush's lawyer clarified any confusion that could have arisen regarding the timeframe of McDowell's drug dealings with Bush. In any event, if McDowell's testimony contained inconsistencies, they would not support a *Napue* claim. *See United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.").

Because Bush has failed to prove that an error occurred during McDowell's trial testimony, Bush is unable to satisfy the plain error standard of review. We therefore reject his *Napue* claim.

III.

Pursuant to the foregoing, we reject Bush's contentions of error and affirm the criminal judgment of the district court.

*AFFIRMED*

15