**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4442**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

ANTOINE DEWAYNE MYLES, a/k/a Twan,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, Chief District Judge.  (5:15-cr-00172-BO-2)

Argued:  January 29, 2020                                          Decided:  March 11, 2020

Before AGEE, DIAZ, and HARRIS, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:**  Cindy Helene Popkin-Bradley, CINDY H. POPKIN-BRADLEY, ATTORNEY AT LAW, Raleigh, North Carolina, for Appellant.  Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:**  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Antoine Myles was sentenced to life imprisonment after being convicted by a jury of five counts arising from his role in a drug-trafficking organization that he and his brother formed in 2004. He raises a number of issues on appeal, including a claim that the district court deprived him of due process by making comments on the morning of jury selection that amounted to "presentencing" him to life imprisonment. As part of this claim, Myles suggests that the district court also failed to adequately explain his reasons for imposing the life sentence that it ultimately imposed during the sentencing hearing. Agreeing that Myles's life sentence is procedurally unreasonable, we vacate his sentence and remand for resentencing, while affirming his conviction.[1]

I.

The Drug-Trafficking Organization ("DTO") that Myles ran with his brother in Godwin, North Carolina was detected by the Narcotics Unit of the Cumberland County Sheriff's Office. Using surveillance techniques, including wire taps and pen registers, investigators determined that Myles "became involved in the DTO after he was released from the Bureau of Prisons on April 1, 2008," and that he "took over as the primary person

---

[1] In addition to the sentencing claims, Myles raises three trial errors on appeal: that the district court conducted inadequate voir dire, deprived him of his right to represent himself at trial, and erred in denying his motions to suppress the evidence obtained by means of the government's wire taps and pen registers. Based on our careful review of these issues and the record, we find no reversible trial error.

responsible for supplying [cocaine base] to the [DTO's] trap house" by at least April 1, 2011,[2] when Myles was released from another period of incarceration. S.J.A. 1229–30.

Into the year 2015, the trap house was operated "24 hours a day, 365 days a year" by multiple shift workers who put in "9 to 12-hour shifts an average of five days per week" selling cocaine and cocaine base. S.J.A. 1230. In all, investigators estimated that Myles was responsible for distributing at least 43.6 kilograms of cocaine base and 504.6 grams of cocaine, in addition to 46.83 grams of marijuana. They also discovered that Myles and his brother "attempted to conceal the source of [their] illegally obtained proceeds by placing assets in other individuals' names, depositing the proceeds in business accounts, purchasing land and vehicles, and concealing deposits to personal accounts by providing false employment information." S.J.A. 1233.

Myles was arrested on June 5, 2015, pursuant to an indictment naming 19 coconspirators and alleging 39 counts. He was later charged by second superseding indictment, as the sole remaining defendant, with five counts: conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine and five kilograms or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846; two counts of possessing cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1); conspiracy to engage in money laundering by concealment, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i)

---

[2] A "trap house" is a term commonly used by narcotic traffickers and narcotic users to refer to a house used for the sole purpose of distributing cocaine and cocaine base. *See United States v. Bush*, 944 F.3d 189, 193 n.7 (4th Cir. 2019).

3

and 1956(h); and engaging in monetary transactions with unlawfully obtained currency, in violation of 18 U.S.C. § 1957. Myles proceeded to a jury trial; was convicted on all counts; and was sentenced to a guidelines sentence of life imprisonment.

Two episodes from Myles's proceedings in the district court stand out for purposes of this appeal. The first occurred at the beginning of jury selection, which took place on the morning of the first day of trial. After defense counsel asked the court to excuse the jury venire, the following colloquy ensued:

> **The Court:** Okay. The jury is out of the courtroom. [Probation Officer], if you know, what is the maximum sentence I can give if [Myles] gets convicted of everything?
>
> **[Probation Officer]:** Life in prison.
>
> **The Court:** Okay. Life in prison. [Defense Counsel], what did you want to tell me. I let the jury go out at your request.
>
> **[Defense Counsel]:** Thank you. Thank you, Your Honor.
>
> **The Court:** How old is your client?
>
> . . . .
>
> **[Defense Counsel]:** Forty-two (42).
>
> **The Court:** Forty-two (42). Okay. So he's looking at spending the rest of his natural life in federal prison?
>
> **[Defense Counsel]:** That's correct, Your Honor.
>
> **The Court:** Has he been in lockup now for four or five years?
>
> **[Defense Counsel]:** Three, I believe.
>
> **The Court:** Three years. Well, that's probably going to happen. So what do you want to know between now and that?

4

J.A. 1134–35.  Defense counsel ultimately didn't want to know much of anything; the parties proceeded to select a jury; and the trial began that afternoon.

The second episode occurred at Myles's brief sentencing hearing, which took place about two-and-a-half months after the trial.  Myles represented himself at sentencing,  and spoke in allocution by objecting to several enhancements identified in the presentence report for drug weight and obstruction of justice (i.e., perjury).  After the government had argued in favor of the enhancements and a corresponding guidelines sentence of life imprisonment, the district court said the following:

> I'll deny all these objections.  [Myles] testified, he was untruthful, he perjured himself, he tried to avoid facing the facts that were clearly established.  And the government's position regarding the drug weight is well supported by the evidence in this case.  Under all of these circumstances, the guideline range is 43, Category IV.  I'll sentence the defendant to the guideline of life in the custody of the United States Bureau of Prisons . . . . [Myles] can appeal the sentence and . . . . the verdict of the jury to the court of appeals under the rules provided in the Rules of Federal Appellant [sic] Procedure and Criminal Law.

J.A. 1117.  Together, these bookends to Myles's jury trial form the basis of the sentencing issues to which we now turn.


## II.

Myles's opening brief alleges a due process claim that the district court deprived him of a fair sentencing hearing by committing to a life sentence during the colloquy that took place before jury selection.  As part of this claim, Myles devotes a paragraph to asserting that the court's failure to explain the life sentence it ultimately imposed reflected that the court had already fixed on that sentence before the trial even began.

5

Though Myles's brief doesn't assert that the court's failure to explain his sentence rendered it procedurally unreasonable, his suggestion readily placed this issue on our radar—as well as, evidently, the government's, which made sure to assert in its brief that Myles had abandoned it. Mindful of our discretion to reach matters of great importance, however, we asked the parties to file supplemental briefs on whether the life sentence imposed in this case is procedurally reasonable and whether we have any basis for reaching the issue. Because (as we explain) we answer both questions in the affirmative, we decline to reach Myles's due process claim.

A.

We first conclude that, even assuming Myles abandoned the issue of procedural reasonableness by taking only "a passing shot" at it in his opening brief, *see Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017),[3] we should exercise our discretion to reach the issue. As we have often recognized, the rules of abandonment "are not jurisdictional in the sense that they encroach in any fashion upon our inherent authority to consider and decide pertinent matters." *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013). We thus "possess the discretion under appropriate circumstances to disregard the parties' inattention to a particular argument or issue." *Id.*; *see also Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 271 (4th Cir. 2019) ("[T]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the

---

[3] We omit internal quotation marks and citations, and adopt alterations, here and throughout this opinion, unless otherwise noted.

discretion of the courts of appeals, to be exercised on the facts of individual cases." (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976))).

As we stated in *Manning*, exercising our discretion to reach an abandoned issue is warranted where three criteria are satisfied: (1) the record provides an adequate basis to consider the issue, (2) neither party is prejudiced by such consideration, and (3) the issue is one of "'exceptional importance.'" *See* 930 F.3d at 271–72 (quoting *United States v. Simms*, 914 F.3d 229, 239 (4th Cir. 2019) ("[W]e opt to proceed to the merits in view of the exceptional importance and recurring nature of the question presented.")). *Manning* synthesized these criteria from previous cases, which sometimes phrased our ability to exercise such discretion in terms of avoiding "a miscarriage of justice." *See, e.g.*, *A Helping Hand, LLC v. Baltimore Cty., Md.*, 515 F.3d 356, 369 (4th Cir. 2008); *see also Villatoro v. Sessions*, 685 F. App'x 242, 247 (4th Cir. 2017).

These criteria are satisfied in this instance. First, the record enables us to determine whether the sentence is procedurally reasonable, which issue turns entirely on the transcript of the sentencing hearing, and even on the single page containing the district court's explanation. Second, the government wouldn't be prejudiced by our doing so because it had the opportunity to address the issue in supplemental briefing and at oral argument. *See, e.g.*, *United States v. Ramos-Cruz*, 667 F.3d 487, 497 n.5 (4th Cir. 2012) ("Inclusion of this argument during supplemental briefing . . . fulfilled the important goal of putting the government on notice as to the substance of Ramos-Cruz's argument."). And while the government asserts that it would have briefed the issue differently had it been raised in Myles's opening brief, we fail to see how a response brief would have furnished the

7

government a more meaningful opportunity to make its case than did the supplemental briefing—since, as noted, the issue of procedural reasonableness turns largely on a single page of the record.[4]

Finally, we think the reasonableness of Myles's life sentence sufficiently important to warrant exercising our discretion to reach it. Though this issue may not affect the public at large in the same way as did the issues in *Manning* and *Simms*, we have frequently exercised our discretion to reach issues whose exceptional importance was confined largely to the parties before us. *See, e.g.*, *Villatoro*, 685 F. App'x at 248 (reaching the Board of Immigration Appeals' particular social group determination with respect to an individual petitioner); *Holness*, 706 F.3d at 591–93 (reaching a *Miranda* issue with respect to an individual defendant); *Ramos-Cruz*, 667 F.3d at 494–97 (reaching a jury instruction issue with respect to an individual defendant). Further, albeit under somewhat different circumstances, we recently addressed the procedural reasonableness of a sentence in spite of the government's abandonment of the issue at every stage of the appeal. *See United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019). We think these cases support the view that the reasonableness of a sentence that would put the defendant in prison for the remainder of his life is too important to be abandoned where the record readily allows us to resolve the issue and where no party would be prejudiced thereby.

---

[4] This observation belies the government's assertion that the circumstances of Myles's jury trial could, with the additional time and pages afforded by a response brief, be shown to provide sufficient "clues that might explain [the chosen] sentence." *See United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009).

8

B.

We turn now to the proper standard under which to review the procedural reasonableness of the life sentence imposed by the district court. We agree with both parties that the standard in this case is plain error.

The applicable standard of review is governed by our decision in *United States v. Lynn*, which held that "the rigorous plain-error standard applies to unpreserved claims of procedural sentencing error." 592 F.3d 572, 577 (4th Cir. 2010). In particular, *Lynn* teaches that a defendant preserves a claim of inadequate explanation by "drawing arguments from [18 U.S.C.] § 3553 for a sentence different than the one ultimately imposed." *Id.* at 578 (citing *United States v. Grier*, 475 F.3d 556, 571 n.11 (3d Cir. 2007) (en banc) ("An objection to [an inadequate explanation] will be preserved if, during sentencing proceedings, the defendant properly raised a meritorious or factual legal issue relating to one or more of the factors enumerated in 18 U.S.C. § 3553(a).")).

Like the defendant in *Lynn*, Myles (as he conceded during oral argument) "failed to preserve his objection in the district court to that court's . . . explanation for the sentence imposed" because he neglected to "ask the court to depart from the correctly calculated Guidelines range based on consideration of the relevant § 3553 factors." *See* 592 F.3d at 580. That is, while Myles did assert (without much of a basis) that the evidence was insufficient to support several enhancements that figured into the presentence report's calculation of the guidelines range, he didn't argue for a sentence below the correctly calculated guidelines range—or even below the sentence he ultimately received—based on any of the § 3553(a) factors. We must therefore review his claim for plain error. *See id.*

9

To establish plain error, Myles bears the burden of showing "(1) that the court erred, (2) that the error is clear and obvious, and (3) that the error affected his substantial rights, meaning that it 'affected the outcome of the district court proceedings.'" *See United States v. Catone*, 769 F.3d 866, 871 (4th Cir. 2014) (quoting *United States v. Olano,* 507 U.S. 725, 732–34 (1993)). "Even when this burden is met, we retain discretion whether to recognize the error and will deny relief unless the district court's error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736).

## C.

Turning finally to the merits, we conclude that the district court plainly erred in failing to articulate any reason for imposing a life sentence—even if such was recommended by the guidelines—in this particular case.

For starters, the district court's failure to say anything about its chosen sentence was a clear and obvious error under the first two prongs of plain-error review. The Supreme Court held years ago that, even where a judge elects to impose a guidelines sentence, he must provide "a statement of reasons" explaining at a minimum that he "rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical." *Rita v. United States*, 551 U.S. 338, 357 (2007); *see also Gall v. United States*, 552 U.S. 38, 49–50 (2007) ("[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support

10

the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable . . . . He must make an individualized assessment based on the facts presented."). Our case law has frequently reiterated these minimal standards. *See, e.g.*, *Provance*, 944 F.3d at 218 ("When rendering a sentence, the district court must make an individualized assessment based on the facts presented and must state in open court the particular reasons supporting its chosen sentence."); *accord, e.g.*, *United States v. Blue*, 877 F.3d 513, 518–19 (4th Cir. 2017); *Lynn*, 592 F.3d at 584; *Carter*, 564 F.3d at 328.

Here, the district court clearly and obviously failed to satisfy these requirements. Just as in *Provance* (a case involving this same district court), the court here failed not only "to explain how the § 3553(a) factors support the [chosen] sentence," but to provide "any rational explanation for this sentence" whatsoever. *See* 944 F.3d at 219. Instead, the court merely declared that it would "sentence the defendant to the guideline of life in the custody of the United States Bureau of Prisons," without a further word. *See* J.A. 1117. The court's total failure to support this sentence by reference to the § 3553(a) factors or to an individualized assessment of the particular facts at bar was manifestly deficient.

Moreover, the government's attempt to construe the court's explanation as something more is unavailing. While the court did state that Myles "was untruthful," that he "tried to avoid facing the facts that were clearly established," and that "the government's position regarding the drug weight" was "well supported by the evidence" before pronouncing the sentence, these comments spoke only to the court's decision to reject Myles's objections to the sentencing enhancements. *See* J.A. 1117. Unlike in *Rita*,

11

however, the court said nothing to explain why the correctly calculated guidelines sentence was appropriate in this particular case.

Though the third prong of plain-error review presents a closer call, we are also satisfied that the district court's failure to explain the sentence affected Myles's substantial rights, i.e., that it "had a prejudicial effect on the sentence imposed." *See Lynn*, 592 F.3d at 580. True, much as in *Lynn*, Myles's "arguments before the district court" did not urge the court to impose anything other than a correctly calculated guidelines sentence. *See id.* Nor did Myles make an argument before this court for a less-than-guidelines sentence of life imprisonment. Nonetheless, we find the circumstances of this case sufficiently different from those of *Lynn* in view of the troubling sentencing-related comments that the district court made on the morning of jury selection and trial.

Recall that the district court began the proceedings by asking the government about the "maximum sentence" that it could "give" Myles "if he gets convicted of everything." J.A. 1134. While the court had every right to know this information, it had no business suggesting that Myles would "probably" spend "the rest of his natural life in federal prison," pursuant to that sentence, before asking defense counsel what she wanted to know "between now and that." *See* J.A. 1134–35.

That said, we think it doubtful that these comments make out a due process violation. Unlike in *United States v. Dunlap*—in which we vacated a sentence where this same district court not only "asked the probation officer to identify the maximum possible sentence," but added, "Okay . . . . I'll do it" before the defendant's opportunity to allocute,

12

*see* 667 F. App'x 828, 828 (4th Cir. 2016)—in this case the court didn't expressly commit to imposing a life sentence before the end of the sentencing proceeding.

Nonetheless, we are satisfied that the district court's "injudicious" pretrial remarks[5]—when considered in combination with the court's abject failure to explain its decision to impose the very sentence to which the remarks improperly alluded—violated Myles's substantial rights in these unique circumstances.  Here, the district court did not simply impose a life sentence without explanation—it did so against a backdrop of comments suggesting its inclination (if not firm commitment) to impose such a sentence before the trial even began.  This backdrop takes the instant case well beyond the complete absence of prejudice we found in *Lynn*, for it raises the concern that the court's failure of explanation reflected an overly facile application of a sentence it had been contemplating for months.

For similar reasons, we have "little doubt that this is the kind of case in which our limited discretion under Rule 52(b) is appropriately exercised so as to preserve the fairness, integrity and reputation of the judicial process."  *See United States v. David*, 83 F.3d 638, 648 (4th Cir. 1996).  On this record, the integrity and reputation of the judicial process requires the district court to articulate some reason for its chosen sentence, not simply in light of the severity of the sentence, but also to dispel the perception from its gratuitous comments on the morning of trial that it had long ago made up its mind.  Accordingly, just

---

[5] *See United States v. Richardson*, __ F. App'x __, 2019 WL 6769752, at \*2–3 (4th Cir. Dec. 12, 2019) (discussing similarly injudicious remarks by the same district court).

as we exercise our discretion to reach the issue of procedural reasonableness in the first place, so too do we exercise our discretion to recognize the district court's plain error in failing to explain its chosen sentence of life imprisonment.

## III.

For the reasons given, we affirm Myles's conviction, but vacate his sentence and remand to the district court for resentencing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*